OPINION
{¶ 1} Appellant, Robert C. Gross, D.O. ("appellant" or "Dr. Gross"), appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, the Ohio State Medical Board ("board" or "Ohio board"), which limited Dr. Gross' certificate to practice osteopathic medicine and surgery in Ohio. Because the common pleas court did not abuse its discretion by affirming the board's order, we affirm the judgment of the common pleas court.
 {¶ 2} Dr. Gross is a general surgeon in solo practice in Michigan. Besides holding medical licensure in Michigan, Dr. Gross also holds medical licenses in New *Page 2 
Mexico and Ohio. Dr. Gross previously held an active medical license in Colorado; however, in September 2006, this medical license was placed on permanent inactive status.
 {¶ 3} By notice dated December 14, 2006, the Ohio board informed Dr. Gross that it intended to determine (1) whether to limit, revoke, permanently revoke, suspend, refuse to register or reinstate his certificate to practice osteopathic medicine and surgery in Ohio, or (2) whether to place Dr. Gross on probation. Claiming that Dr. Gross violated former R.C. 4731.22(B)(22), [1] the board alleged:
 On or about September 21, 2006, the Colorado State Board of Medical Examiners [Colorado Board] approved a stipulation and Final Agency Order wherein * * * you agreed to have your license to practice medicine in the State of Colorado [Colorado license] placed on inactive status. You further agreed that said inactivation shall be permanent and that you shall not apply to reactivate your Colorado license at any time in the future. * * *
 {¶ 4} Dr. Gross requested an administrative hearing pursuant to R.C. Chapter 119. After an evidentiary hearing, a hearing examiner issued a report and recommendation wherein she rendered findings of fact, a conclusion of law, and a proposed order. In her conclusion of law, the hearing examiner found that the action of the Colorado State Board of Medical Examiners ("Colorado board") constituted grounds for the Ohio board to render discipline against Dr. Gross under former R.C. 4731.22(B)(22). Accordingly, the hearing examiner issued a proposed order for the board's consideration. *Page 3 
 {¶ 5} Dr. Gross filed objections to the hearing examiner's report and recommendation. Upon filing a timely request, Dr. Gross was granted permission to address board members. Confirming in part and amending in part the hearing examiner's report and recommendation, including the proposed order, the board issued an order wherein it temporarily limited and restricted Dr. Gross' certificate to practice osteopathic medicine and surgery, and imposed probationary conditions. By this order, the board required Dr. Gross (1) to refrain from practicing in Ohio without prior approval by the board; (2) to notify the board if he intended to begin practicing in Ohio; and (3) to submit a plan of practice if he were to begin practice in Ohio. By its order, the board also imposed probationary conditions upon Dr. Gross if he were to practice in Ohio, and the board required Dr. Gross to provide a copy of the board's order to employers and hospitals where Dr. Gross held privileges or appointments, and to other state licensing authorities.
 {¶ 6} Claiming that the board's order was not supported by reliable, probative, and substantial evidence, and that the board's order was not in accordance with law, Dr. Gross appealed from the board's order to the Franklin County Court of Common Pleas. Besides appealing from the board's order, Dr. Gross contemporaneously moved the common pleas court to stay execution of the board's order.
 {¶ 7} The common pleas court granted Dr. Gross' motion for a stay provided that during the pending appeal Dr. Gross did not practice medicine or surgery in Ohio, and if Dr. Gross were to practice in Ohio during this time, any such practice would be considered practicing osteopathy without a certificate, a violation of R.C. 4731.43. Finding that the board's order, which limited Dr. Gross' certificate to practice osteopathic medicine and surgery was supported by reliable, probative, and substantial evidence, and was in accordance with law, the common pleas court later affirmed the board's order. *Page 4 
 {¶ 8} From the common pleas court's judgment affirming the board's order, Dr. Gross now appeals. Dr. Gross advances two errors for our consideration:
 I. FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO APPELLANT'S PREJUDICE WHEN IT FOUND THE ORDER OF THE STATE MEDICAL BOARD OF OHIO IN ACCORDANCE WITH LAW.
 II. SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO APPELLANT'S PREJUDICE WHEN IT FOUND THE ORDER OF THE STATE MEDICAL BOARD OF OHIO IS SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE.
 {¶ 9} Because Dr. Gross' assignments of error are interrelated, we shall jointly consider them. By his assignments of error, Dr. Gross contends that (1) the board's action violated Dr. Gross' right to procedural due process because the board purportedly disciplined Dr. Gross for presumed standard of care violations under division (B)(6) of former R.C. 4731.22, rather than for a violation of division (B)(22) under former R.C. 4731.22, as stated in its notice to Dr. Gross; and (2) the Colorado board's action did not constitute a cognizable basis under former R.C. 4731.22(B)(22) to support the Ohio board's action.
 {¶ 10} Claiming that Dr. Gross challenges for the first time in this appeal whether the Colorado board's action constitutes a cognizable basis to support discipline under former R.C. 4731.22(B)(22), the board asserts Dr. Gross has waived this issue for purposes of appeal. Accordingly, the board urges us to disregard this argument by Dr. Gross.
 {¶ 11} As a general rule, an appellate court will not consider arguments that were not raised in a court below. Belvedere CondominiumUnit Owners' Assn. v. R.E. Roark *Page 5 Cos., Inc. (1993), 67 Ohio St.3d 274, 279, modified on other grounds byDombroski v. WellPoint, Inc., 119 Ohio St.3d 506, 2008-Ohio-4827, citingState v. 1981 Dodge Ram Van (1988), 36 Ohio St.3d 168. This waiver doctrine, however, is not absolute. Belvedere Condominium Unit Owners'Assn., at 279. (Citations omitted.) "When an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, [an appellate court] may consider and resolve that implicit issue. To put it another way, if [an appellate court] must resolve a legal issue that was not raised below in order to reach a legal issue that was raised, [it] will do so." Id.
 {¶ 12} Here, in his appeal to the common pleas court, Dr. Gross claimed, among other things, that the board's action was not in accordance with law. Dr. Gross' claim that the board lacked a cognizable basis to support an order disciplining Dr. Gross is implicit in a claim that the board failed to act in accordance with law. Thus, to the extent that Dr. Gross' claim that the board lacked a cognizable basis to support an order disciplining Dr. Gross is implicit in his claim that the board failed to act in accordance with law, we shall consider Dr. Gross' argument in this appeal.
 {¶ 13} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law.Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111;Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280. See, also, Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571 (defining reliable, probative, and substantial evidence).
 {¶ 14} A common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court *Page 6 
`must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'"Lies v. Ohio Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quotingAndrews, at 280. In its review, a common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive.Conrad, at 111.
 {¶ 15} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied,67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio explained:
 * * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. at 621. But, see, Smith v. Ohio Liquor Control Comm. (Dec. 10, 1998), Athens App. No. 98CA03, at fn. 1.[2]
 {¶ 16} Although in reviewing an administrative decision it is incumbent upon an appellate court to determine only if a common pleas court has abused its discretion, Pons, at 621, an appellate court does, however, have plenary review of questions of law. *Page 7 Chirila v. Ohio State Chiropractic Bd. (2001), 145 Ohio App.3d 589, 592, citing Steinfels v. Ohio Dept. of Commerce, Div. of Sec. (1998),129 Ohio App.3d 800, 803, appeal not allowed (1999), 84 Ohio St.3d 1488.
 {¶ 17} Dr. Gross first asserts that the board violated his right to procedural due process because it purportedly disciplined Dr. Gross for violations not stated in its notice to him.
 {¶ 18} "Due process contains two components: procedural due process and substantive due process." State v. Pennington (Jan. 29, 2002), Franklin App. No. 01AP-657, 2002-Ohio-296, appeal not allowed,95 Ohio St.3d 1460, 2002-Ohio-2230. See, generally, Cleveland Bd. of Edn. v.Loudermill (1985), 470 U.S. 532, 541, 105 S.Ct. 1487 (stating that "* * * the Due Process Clause provides that certain substantive rights — life, liberty, and property — cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct"); Pennington, supra.
 {¶ 19} "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v.Roth (1972), 408 U.S. 564, 569, 92 S.Ct. 2701. See, also, Sorrell v.Thevenir (1994), 69 Ohio St.3d 415, 422-423, citing Direct PlumbingSupply Co. v. Dayton (1941), 138 Ohio St. 540, 544 (stating that "[t]he `due course of law' provision [in Section 16, Article I of the Ohio Constitution] is the equivalent of the `due process of law' provision in the Fourteenth Amendment to the United States Constitution");Chirila, supra, at 593, citing LTV Steel Co. v. Indus. Comm. (2000),140 Ohio App.3d 680, 688 (stating that "[d]ue process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings"). *Page 8 
 {¶ 20} "For all its consequences, `due process' has never been, and perhaps can never be, precisely defined. `[U]nlike some legal rules, "* * * due process `is not a technical conception with a fixed content unrelated to time, place and circumstances.' * * * Rather, the phrase expresses the requirement of `fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." Lassiter v. Dept.of Social Servs. of Durham Cty., N. Carolina (1981), 452 U.S. 18, 24,101 S.Ct. 2153, rehearing denied, 453 U.S. 927, 102 S.Ct. 889. (Citation omitted.) "In defining the process necessary to ensure `fundamental fairness,' [the Supreme Court of the United States] [has] recognized that the Clause does not require that `the procedures used to guard against an erroneous deprivation . . . be so comprehensive as to preclude any possibility of error,' * * * and in addition [the Supreme Court of the United States] [has] emphasized that the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a safeguard."Walters v. Natl. Assn. of Radiation Survivors (1985), 473 U.S. 305,320-321, 105 S.Ct. 3180, superseded by statute as stated in Beamon v.Brown (C.A.6, 1997), 125 F.3d 965. (Citations omitted.)
 {¶ 21} "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank Trust Co. (1950),339 U.S. 306, 314, 70 S.Ct. 652. (Citations omitted.)
 {¶ 22} In LTV Steel Co., supra, this court also explained:
 The United States Supreme Court and Ohio Supreme Court both use the test expressed in Mathews v. Eldridge (1976), 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33-34, as the basis for due process analysis in administrative hearings. * * * Under that test, the court must weigh the *Page 9 
following three factors to determine whether the process granted in the administrative proceeding is constitutionally adequate (1) the private interest at stake, (2) the risk of an erroneous deprivation of that interest and the probable value of additional procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. Mathews, at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33-34.
Id. at 689.
 {¶ 23} Here, after having acquired a certificate to practice osteopathic medicine and surgery in Ohio, Dr. Gross had a protected property interest in the practice of osteopathic medicine and surgery.Haj-Hamed v. State Med. Bd. of Ohio, Franklin App. No. 06AP-351,2007-Ohio-2521, at ¶ 53; see, also, Haver v. Accountancy Bd. ofOhio, Franklin App. No. 05AP-280, 2006-Ohio-1162, at ¶ 47, appeal not allowed, 110 Ohio St.3d 1440, 2006-Ohio-3862; Althof v. Ohio State Bd.of Psychology, Franklin App. No. 05AP-1169, 2007-Ohio-1010, at ¶ 17, appeal not allowed, 114 Ohio St.3d 1510, 2007-Ohio-4285. AccordCarothers v. Ohio Bd. of Speech-Language Pathology Audiology, Geauga App. No. 2004-G-2559, 2004-Ohio-6695, at ¶ 10 (acknowledging that a person has a protected property interest in a professional license).
 {¶ 24} As to the threatened deprivation of this protected property interest, however, Dr. Gross was not deprived of adequate notice and an opportunity to present his objections, as required by procedural due process. Specifically, the board's notice informed Dr. Gross of (1) the allegation against him; (2) the statute directly involved, namely, former R.C. 4731.22(B)(22); and (3) reasons for the board's proposed action. The board's notice also provided Dr. Gross with an opportunity to request a hearing. Cf. R.C. 119.07. *Page 10 
 {¶ 25} Moreover, at an administrative hearing, Dr. Gross was provided with a full opportunity to offer evidence on his behalf and to rebut the state's evidence. And, after the evidentiary hearing, Dr. Gross had an opportunity to directly address the board. See, generally, Clayman v.State Med. Bd. of Ohio (1999), 133 Ohio App.3d 122, 127, dismissed, appeal not allowed, 87 Ohio St.3d 1459, quoting State ex rel. OrmetCorp. v. Indus. Comm. (1990), 54 Ohio St.3d 102, 104 (Bryant, J., dissenting with opinion) (observing that "[t]he crux of such a right to due process in an administrative proceeding is that `statutory procedural provisions aside, a requirement to conduct a "hearing" implies a "fair hearing"'").
 {¶ 26} Balancing (1) Dr. Gross' protected property interest, (2) the risk of an erroneous deprivation of that interest and the probable value of additional procedural safeguards, and (3) the government's interest, i.e., regulating medical practice in Ohio, we cannot conclude that, under the circumstances of this case, Dr. Gross was deprived of procedural due process.
 {¶ 27} Equally unconvincing is Dr. Gross' claim that the Colorado board's action failed to constitute a cognizable basis under former R.C. 4731.22(B)(22) to support the Ohio board's action.
 {¶ 28} Dr. Gross' claim that the Ohio board lacked a cognizable basis to render discipline against his Ohio certificate to practice osteopathic medicine and surgery resolves to this issue: whether under former R.C. 4731.22(B)(22) the Colorado board's action constitutes a "limitation" of Dr. Gross' license to practice in Colorado.
 {¶ 29} Former R.C. 4731.22, which was in effect at all times pertinent to the proceedings, provided in part: *Page 11 
 (B) The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
 * * * (22) Any of the following actions taken by the agency responsible for regulating the practice of medicine and surgery, osteopathic medicine and surgery, podiatric medicine and surgery, or the limited branches of medicine in another jurisdiction, for any reason other than the nonpayment of fees: the limitation, revocation, or suspension of an individual's license to practice; acceptance of an individual's license surrender; denial of a license; refusal to renew or reinstate a license; imposition of probation; or issuance of an order of censure or other reprimand[.]
 {¶ 30} Here, on September 21, 2006, the Colorado State Board of Medical Examiners issued a "Stipulation and Final Agency Order" as to Dr. Gross' license to practice medicine in Colorado. In this stipulation and final order, wherein the Colorado board and Dr. Gross mutually negotiated and determined the terms of the order, the Colorado board stated, among other things, that:
 The Panel has reviewed seven of Respondent's surgical cases and has found that Respondent failed to meet generally accepted standards of medical practice with regard to several cases. Respondent does not admit and specifically denies all allegations of unprofessional conduct. In order to resolve the differences between the parties and avoid the expense and uncertainty of litigation, the parties have agreed to the terms of this Order.
Id. at paragraph 6.
 {¶ 31} By its order, the Colorado board placed Dr. Gross' medical license on "inactive status." Id. at paragraph 8. The Colorado board's order further provided that "[r]espondent agrees that the inactivation of his license shall be permanent and *Page 12 
Respondent shall not apply to reactivate his license at any time in the future." Id. at paragraph 10. And, the Colorado board's order also provided that the board's action against Dr. Gross would be reported to, among other things, a practitioner data bank. Id. at paragraph 18.
 {¶ 32} "The polestar of construction and interpretation of statutory language is legislative intention." State ex rel Francis v. Sours
(1944), 143 Ohio St. 120, 124. "In determining the legislative intent of a statute `it is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words notused.'" (Emphasis sic.) Wheeling Steel Corp. v. Porterfield (1970),24 Ohio St.2d 24, 28, quoting Columbus-Suburban Coach Lines v. Pub. Util.Comm. (1969), 20 Ohio St.2d 125, 127.
 {¶ 33} "[C]ourts do not have authority to ignore the plain and unambiguous language under the guise of judicial interpretation, but rather in such situations the courts must give effect to the words used." In re Burchfield (1988), 51 Ohio App.3d 148, 152, citingDougherty v. Torrence (1982), 2 Ohio St.3d 69, 70; Ohio DentalHygienists Assn. v. Ohio State Dental Bd. (1986), 21 Ohio St.3d 21, 23;State v. Krutz (1986), 28 Ohio St.3d 36, 38, certiorari denied (1987),481 U.S. 1028, 107 S.Ct. 1953. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." Sears v.Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus.
 {¶ 34} "No clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous." State v.Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095, at ¶ 11. "When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning." Id., citingWestfield *Page 13 Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 11, reconsideration denied, 100 Ohio St.3d 1548, 2003-Ohio-6789. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." Porterfield, at ¶ 11.
 {¶ 35} Although the General Assembly did not define "limitation" for purposes of former R.C. 4731.22(B)(22), we cannot conclude that a definitive meaning of this term proves elusive. In State v. Dorso
(1983), 4 Ohio St.3d 60, the Supreme Court of Ohio explained that "[a] legislative body need not define every word it uses in an enactment. * * * [A]ny term left undefined by statute is to be accorded its common, everyday meaning. * * * `Words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them.'" Id. at 62, quoting Eastman v. State (1936),131 Ohio St. 1, paragraph five of the syllabus, appeal dismissed,299 U.S. 505, 57 S.Ct. 21. Cf. R.C. 1.42 (providing that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly").
 {¶ 36} The term "limitation" in common usage is characterized by enforceable restrictions imposed upon the scope or exercise of a privilege or power. Thus, in the context of former R.C. 4731.22(B)(22), the term "limitation" reasonably may be construed as referencing an action taken by a medical licensing agency in another jurisdiction that imposed an enforceable restriction upon the scope or exercise of a person's medical license.
 {¶ 37} In the present case, by placing Dr. Gross' medical license on permanent inactive status and prohibiting Dr. Gross from reapplying to reactivate his license at any *Page 14 
time in the future, the Colorado board imposed enforceable restrictions upon Dr. Gross' ability to practice medicine in Colorado.
 {¶ 38} Accordingly, we find that the Ohio board reasonably could have construed the Colorado board's action as a "limitation" as that term is used in former R.C. 4731.22(B)(22). Moreover, such an interpretation comports with the Ohio board's charge of regulating the practice of physicians under R.C. Chapter 4731. See, e.g., Farrand v. State Med.Bd. (1949), 151 Ohio St. 222, 224 (stating that "[t]he purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field");Pons, at 621.
 {¶ 39} Besides claiming that the Colorado board's action failed to constitute a cognizable basis to support the Ohio board's order under former R.C. 4371.22(B)(22), Dr. Gross also claims that the Ohio board's limitations and restrictions to Dr. Gross' certificate to practice osteopathic medicine and surgery lack any foundation in reliable, probative, and substantial evidence, and these restrictions are fundamentally unfair. We cannot agree.
 {¶ 40} First, Dr. Gross' claim that he simply inactivated his Colorado license in an administrative, ministerial manner is belied by the Colorado board's finding that Dr. Gross failed to meet generally accepted standards of medical practices with regard to several cases that it reviewed.
 {¶ 41} Second, at the Ohio administrative hearing, Dr. Gross admitted that at two Michigan hospitals he was practicing under restricted privileges, and he did not have full privileges at these facilities. (Tr. 35-36.) *Page 15 
 {¶ 42} Third, in a March 2007 letter to the board, which Dr. Gross submitted into evidence, Steven B. Calkin, D.O., FACOI, Vice President for Medical Affairs at a hospital in Michigan, corroborated Dr. Gross' admission that he was practicing under restricted privileges. In this letter, Dr. Calkin stated in part:
 * * * Due to past licensure issues in Colorado prior to joining [the hospital's] staff Dr. Gross was granted privileges with restriction for supervision by a more experienced surgeon, with the intent to release him from such restrictions after members of the Section of Surgery were comfortable in his abilities.
 Due to the low volume of complicated surgical cases, the requirement for Dr. Gross to continue to discuss upcoming cases with a more experienced surgeon prior to surgical boarding is still in effect. * * *
 {¶ 43} Accordingly, Dr. Gross' own testimony, the Colorado board's order, and Dr. Calkin's letter constitute some reliable, probative, and substantial evidence to support the board's view that temporary limitations and restrictions upon Dr. Gross' certificate to practice osteopathic medicine and surgery were necessary under the circumstances of this case.
 {¶ 44} Dr. Gross' suggestion that the common pleas court erred by failing to modify the board's order also lacks merit.
 {¶ 45} In Henry's Cafe, Inc. v. Bd. of Liquor Control (1959),170 Ohio St. 233, the Supreme Court of Ohio held in part:
 2. On appeal from an order of an agency (as defined in Section 119.01, Revised Code) to the Court of Common Pleas, the power of the court to modify such order is limited to the ground set forth in Section 119.12, Revised Code, i. e., the absence of a finding that the order is supported by reliable, probative, and substantial evidence.
 3. On such appeal, the Court of Common Pleas has no authority to modify a penalty that the agency was authorized *Page 16 
to and did impose, on the ground that the agency abused its discretion.
Id. at paragraphs two and three of the syllabus.
 {¶ 46} "In the context of cases which originated before the State Medical Board of Ohio, the edicts of Henry's Cafe have been reinforced by Pons, supra." Coniglio v. State Med. Bd. of Ohio, Franklin App. No. 07AP-298, 2007-Ohio-5018, at ¶ 9, appeal not allowed (2008),117 Ohio St.3d 1407, 2008-Ohio-565. See Pons, at syllabus (holding that "[w]hen reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession").
 {¶ 47} Here, having properly found that the board's order was supported by reliable, probative, and substantial evidence, and having found that the board's order was in accordance with law, the common pleas court lacked authority to modify the penalty lawfully imposed by the board. See, e.g., Coniglio, supra.
 {¶ 48} Lastly, we cannot agree with Dr. Gross' claim that the Ohio board's order was an improper and sub silentio collateral attack on the Colorado board's order. An Ohio administrative proceeding cannot be used as a means of conducting a collateral attack on the Colorado board's decision. See, e.g., Coniglio, supra. Here, there is no doubt that the Colorado board took action against Dr. Gross' medical license by permanently inactivating his medical license and prohibiting Dr. Gross from applying to reactivate his Colorado license in the future. The Colorado board's action served as a sufficient basis for the Ohio board to take action of its own. Reliable, probative, and substantial evidence therefore demonstrates the fact of the Colorado board's action. SeeConiglio, supra. *Page 17 
 {¶ 49} Accordingly, finding that the common pleas court did not abuse its discretion by affirming an order of the State Medical Board of Ohio that placed limitations upon appellant's certificate to practice osteopathic medicine and surgery, we overrule appellant's first and second assignments of error. Having overruled all of appellant's assignments of error, we therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 KLATT and TYACK, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Since December 2006, R.C. 4731.22 has been amended several times. See (2007) Am. Sub. H.B. No. 119, effective September 29, 2007; (2008) Am. H.B. No. 314, effective June 20, 2008; (2008) Sub. S.B. No. 229, effective September 11, 2008. Division (B)(22) of R.C. 4731.22 was unaffected by these amendments.
[2] In Smith, the Fourth District Court of Appeals observed that inBrown v. Ohio Bur. of Emp. Servs. (1994), 70 Ohio St.3d 1, reconsideration denied, 70 Ohio St.3d 1448, "the Ohio Supreme Court inexplicably deviated from its prior course by phrasing the standard of review facing the court of appeals as being whether the common pleascourt's decision was supported by reliable, probative and substantial evidence." (Emphasis sic.) Id. at fn. 1. See, also, In re Jack Fish Sons, Inc., 159 Ohio App.3d 649, 2005-Ohio-545, at ¶ 7, fn. 2. *Page 1