[Cite as *Krusling v. Ohio Bd. of Pharmacy*, 2012-Ohio-5356.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| MICHAEL R. KRUSLING, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2012-03-023 |
| | : | O P I N I O N |
| - vs - | | 11/19/2012 |
| | : | |
| OHIO BOARD OF PHARMACY, | : | |
| Defendant-Appellee. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2011 CVF 0649

Graff & McGovern, James M. McGovern, 604 East Rich Street, Columbus, Ohio 43215, for plaintiff-appellant

R. Michael DeWine, Ohio Attorney General, Sean M. Culley, Health & Human Services Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215, for defendant-appellee

**RINGLAND, J.**

{¶ 1} Appellant, Michael R. Krusling, appeals from a decision in the Clermont County Court of Common Pleas affirming a decision of the Ohio State Board of Pharmacy ("Pharmacy Board") revoking his license to practice pharmacy. For the reasons outlined below, we affirm.

{¶ 2} Krusling is a pharmacist at an independent pharmacy in Batavia, Ohio, and has

been licensed to practice pharmacy in Ohio for approximately four decades. The Pharmacy Board is the regulating body for pharmacists in Ohio. On August 6, 2010, the Pharmacy Board issued a Notice of Opportunity for Hearing to Krusling stating that it was determining whether to take action against his pharmacy license. The notice alleged, among other things, that he knowingly sold controlled substances not authorized by a prescriber, knowingly possessed false or forged prescriptions, misbranded drugs, and failed to keep accurate records. The 16-page notice included specific instances where Krusling allegedly committed prohibited conduct.

{¶ 3} In addition, the notice provided a list of possible sanctions for these offenses as outlined in R.C. 4729.16, which states that the Pharmacy Board:

> after notice and hearing in accordance with Chapter 119. of the
> Revised Code, may revoke, suspend, limit, place on probation,
> or refuse to grant or renew an identification card, or may impose
> a monetary penalty or forfeiture * * * .

Krusling responded to the notice by obtaining counsel and requesting a hearing.

{¶ 4} At a hearing held on March 9, 2011, Krusling testified and introduced evidence on his behalf. Following the hearing, the Pharmacy Board concluded that Krusling had committed gross immorality, dishonesty and/or unprofessional conduct in the practice of pharmacy, and willfully violated the drug offenses chapter of the Revised Code, all on numerous occasions. Additionally, the Pharmacy Board found that Krusling permitted someone other than a pharmacist or pharmacy intern to practice pharmacy. As a result, the Pharmacy Board revoked Krusling's pharmacy license. The Pharmacy Board's decision states that it "hereby revokes permanently" Krusling's pharmacy license.

{¶ 5} Krusling appealed the Pharmacy Board's decision to the Clermont County Court of Common Pleas, arguing that he was not notified in the Notice of Opportunity for Hearing that his pharmacy license was subject to permanent revocation. As a consequence, Krusling

alleged that his due process rights were violated. Nevertheless, the common pleas court found that the notice complied with the Revised Code section governing notice requirements for administrative proceedings, R.C. 119.07, and that the notice also complied with due process. It is from this decision in the common pleas court that Krusling appeals, and raises one assignment of error for review.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE COMMON PLEAS COURT ERRED BY AFFIRMING THE PHARMACY BOARD ORDER BECAUSE THE BOARD VIOLATED [KRUSLING'S] DUE PROCESS RIGHTS BY FAILING TO NOTIFY HIM IN ADVANCE OF THE ADJUDICATION PROCESS THAT IT MAY PERMANENTLY REVOKE HIS OHIO PHARMACIST LICENSE.

{¶ 8} On appeal, Krusling's sole argument is that that the Pharmacy Board violated his due process rights because it did not inform him that a possible disciplinary action was the permanent revocation of his pharmacy license. We disagree.

{¶ 9} "A court of common pleas may affirm an administrative agency's determination if it is 'supported by reliable, probative, and substantial evidence and is in accordance with law.'" *Bateson v. Ohio Dept. of Job & Family Servs.*, 12th Dist. No. CA2003-09-093, 2004-Ohio-6247, ¶ 7, quoting R.C. 119.12. The review of an appellate court is more limited. *Bateson* at ¶ 7. Typically, the proper standard of review is whether the common pleas court abused its discretion in finding that the decision of the administrative agency was supported by reliable, probative, and substantial evidence. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993). Issues relating to constitutionality and procedural due process arising from an agency's action, however, fall under a less deferential standard of review than the abuse-of-discretion standard, as they are questions of law. *Crawford-Cole v. Lucas Cty. Dept. of Job & Family Servs.*, 6th Dist. No. L-11-1177, 2012-Ohio-3506, ¶ 12. Questions of law are subject to a de novo standard of review by an appellate court. *Bateson* at ¶ 7.

{¶ 10} Before discussing due process, we will first analyze the meaning of the term "revoke" in the context of proceedings before the Pharmacy Board. Krusling contends that the Ohio Supreme Court in *State v. White*, 29 Ohio St.3d 39 (1987), implied that revocation may not always mean a permanent revocation without the option to reapply for a license. While this may be true, the Ohio Supreme Court in *White* found that "revoke" can mean "permanently revoke." Furthermore, it is clear that "revoke" means "permanently revoke" in the context of proceedings before the Pharmacy Board.

{¶ 11} The Ohio Supreme Court in *White* addressed whether a defendant's driver's license may be permanently revoked. The statute at issue allowed the trial court to "suspend" or "revoke" a defendant's driver's license. *Id.* at 40. Despite failing to use the term "permanent" in conjunction with the term "revoke," the Ohio Supreme Court found that the statute allowed for permanent revocation. *Id.* at 40-41. In reaching this conclusion, the Ohio Supreme Court stated that the use of both the terms "suspend" and "revoke" imply that these terms are not synonymous. *Id.* at 40. The Ohio Supreme Court stated that the common, everyday meaning of "revocation" is "a permanent taking without the expectation of reinstatement." *Id.* at 40. While in some contexts a statute may imply that revocation is not to be permanent, this was not the case regarding the applicable statute in *White* regarding driver's licenses. *Id.* at 40-41.

{¶ 12} In the context of Pharmacy Board proceedings, "revoke" is clearly defined as being permanent. The Pharmacy Board utilized its rulemaking function pursuant to R.C. 4729.26 to promulgate a rule to define "revoke." Revoke is defined in Ohio Adm.Code 4729-9-01(E) as meaning "to take action against a license rendering such license void and such license may not be reissued." This section further states that "'[r]evoke' is an action that is permanent against the license and licensee." Ohio Adm.Code 4729-9-01(E). "[Ohio] Adm.Code 4729-9-01(E) specifically provides that the [P]harmacy [B]oard can forever bar a

person from holding a pharmacy license after revocation." *Richter v. State Med. Bd. of Ohio*, 161 Ohio App.3d 606, 2005-Ohio-2995, ¶ 13 (10th Dist.). Additionally, the Pharmacy Board "does not need to specify in its order that its revocation of a pharmacy license is permanent, as Ohio Adm.Code 4729-9-01(E) has already done so." *Poignon v. Ohio Bd. of Pharmacy*, 10th Dist. No.03AP-178, 2004-Ohio-2709, ¶ 7. Consequently, the term "revoke" is unambiguous in the context of proceedings before the Pharmacy Board. "Revoke" means "permanently revoke" and is applicable to both the specific license number and the licensee.

{¶ 13} Now we will address whether Krusling was denied due process. To comply with due process, at a minimum, notice and an opportunity for a hearing are necessary. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652 (1950). "'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Gross v. State Med. Bd. of Ohio*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 21, quoting *Mullane* at 314. Additionally, due process "embodies the concept of fundamental fairness." *Sohi v. Ohio State Dental Bd.*, 130 Ohio App.3d 414, 422 (4th Dist.1998). The concept is "flexible" and "calls for such procedural safeguards as the particular situation demands." *LTV Steel Co. v. Indus. Comm.*, 140 Ohio App.3d 680, 688 (10th Dist.2000); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593 (1972).

{¶ 14} "[D]ue process requires that an individual receive fair notice of the precise nature of the charges that will be raised at a disciplinary hearing." *Griffin v. State Med. Bd. of Ohio*, 10th Dist. No.11AP-174, 2011-Ohio-6089, ¶ 22. Furthermore, ignorance of the law does not amount to a lack of notice. *State v. Smith*, 3d Dist. No.5-07-23, 2008-Ohio-4778, ¶ 18. *See State v. Parker*, 68 Ohio St.3d 283, 286 (1994). Regarding the right to a hearing, due process "includes the right to appear at the hearing prepared to defend oneself through

testimony, evidence, or argument against the charges brought." *Griffin* at ¶ 22.

{¶ 15} Ohio courts have utilized the test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976), to analyze whether due process is satisfied in an administrative context. *Carothers v. Ohio Bd. of Speech-Language Pathology & Audiology*, 11th Dist. No.2004-G-2559, 2004-Ohio-6695; *LTV Steel. LTV Steel* states:

> Under that test, the court must weigh the following three factors to determine whether the process granted in the administrative proceeding is constitutionally adequate (1) the private interest at stake, (2) the risk of an erroneous deprivation of that interest and the probable value of additional procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mathews,* at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33-34.

*Id.* at 689. A person has a protected property interest in a professional license. *Korn v. Ohio State Med. Bd.*, 61 Ohio App.3d 677, 684 (10th Dist.1988); *Carothers* at ¶10. Additionally, the government has an interest in regulating professions. *Gross* at ¶ 26.

{¶ 16} Applying *Mathews* to this case, Krusling has a protected property interest in his pharmacy license. Likewise, the government has an interest in regulating the practice of pharmacy in Ohio. As to the threatened deprivation of this protected property interest, however, there is little risk of erroneous deprivation as Krusling was not deprived of notice and an opportunity to present his objections. Krusling was provided with a detailed 16-page notice. The notice informed Krusling of the allegations against him, and included specific alleged instances with lists of dates and drugs involved. It also listed the Revised Code sections Krusling allegedly violated.

{¶ 17} In addition, the notice listed possible sanctions, including that the Pharmacy Board may "revoke" Krusling's pharmacy license. As discussed above, "revoke" in the context of Pharmacy Board proceedings means "permanently revoke" and is applicable to both Krusling's specific license number and Krusling as the licensee. Krusling's ignorance of

the precise definition of "revoke" in this context does not mean he was not notified of the possibility that his pharmacy license might be permanently revoked, especially given its use in conjunction with "suspend" and the common, everyday meaning of the term. *See White*, 29 Ohio St.3d at 42 (finding due process was not violated when the court permanently revoked a defendant's driver's license given the definition of revoke and defendant was given notice and a full opportunity to be heard).

{¶ 18} Furthermore, the notice informed Krusling that he was entitled to a hearing, and that he could appear personally or by his attorney.[1] Krusling appeared at an administrative hearing and was provided with a full opportunity to testify and enter exhibits on his behalf, which he did with the aid of counsel. Consequently, Krusling was provided adequate notice and an opportunity to be heard.

{¶ 19} Balancing Krusling's interest in his pharmacy license, the government's interest in regulating the practice of pharmacy, and the negligible risk of the possibility of erroneous deprivation, we cannot conclude that, under the circumstances of this case, Krusling was deprived of due process. Accordingly, Krusling's sole assignment of error is overruled.

{¶ 20} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.

---

1. We note that the notice complied with R.C. 119.07, which governs the notice requirements in administrative proceedings. R.C. 119.07 provides that notice "shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing * * *." Furthermore, R.C. 119.07 provides that "[t]he notice shall also inform the party that at the hearing the party may appear in person, by the party's attorney, or by such other representative * * *." Because "whether an agency has complied with due process, trumps statutory or procedural considerations," we conducted a due process analysis. *Chirila v. Ohio State Chiropractic Bd.*, 145 Ohio App.3d 589, 595 (10th Dist.2001).