[Cite as *Clark v. State Med. Bd.*, 2015-Ohio-251.]

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dustin M. Clark, M.D., | : | |
| Appellant-Appellant, | : | No. 14AP-212 |
| v. | : | (C.P.C. No. 13CV-11147) |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

## D E C I S I O N

### Rendered on January 27, 2015

*Dinsmore & Shohl, LLP*, *Eric J. Plinke*, and *Daniel S. Zinsmaster*, for appellant.

*Michael DeWine*, Attorney General, and *Kyle C. Wilcox*, for appellee.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1}  This is an appeal by appellant, Dustin M. Clark, M.D., from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, State Medical Board of Ohio ("board"), imposing certain limitations/restrictions on appellant's certificate to practice medicine and surgery in Ohio.

{¶ 2}  The following factual background is drawn from the trial court's decision as well as from the summary of evidence set forth in the report and recommendation issued by a board hearing examiner.  Appellant obtained his medical degree in 2006, and in 2007, he became eligible for licensure in Ohio.  From July 2006 through June 2007,

appellant participated in a transitional internship at Mercy St. Vincent Medical Center, located in Toledo.

{¶ 3}   In 2007, appellant started residency training in anesthesia at a medical center in Texas.  In 2009, during his second year as an anesthesiology resident, appellant began to "use and misuse opiates, including fentanyl, sufentanil, hydromorphone and midazolam."  Appellant admitted to falsifying medical records to obtain drugs.  In August 2009, appellant received drug treatment at a facility in Texas, and he was discharged in September 2009 with a diagnosis of opiate dependence.  On November 22, 2009, appellant entered a drug treatment program at Talbott Recovery Campus, a board approved treatment provider in Atlanta, Georgia, and he was discharged on February 17, 2010.  He resigned from his anesthesiology residency in April 2010.  In July 2011, appellant began a family medicine residency program at East Tennessee State University, Quillen College of Medicine, in Johnston City, Tennessee.

{¶ 4}   Due to appellant's chemical dependency, which impaired his ability to practice medicine, appellant and the board entered into a Step I consent agreement, effective March 10, 2010 ("the Step I agreement"), under which appellant's certificate to practice medicine and surgery in Ohio was permanently revoked, but such revocation was stayed, and his certificate to practice was suspended indefinitely for a minimum of 18 months, with conditions for reinstatement established.  Upon meeting the conditions of reinstatement, the Step I agreement provided for appellant to enter into a second consent agreement ("the Step II agreement"), including probationary terms, conditions, and limitations as determined by the board.  In the event the parties were unable to agree on those terms, appellant agreed to abide by any terms, conditions, and limitations imposed by the board after a hearing conducted pursuant to R.C. Chapter 119.

{¶ 5}   As a condition of reinstatement, appellant agreed to obtain written reports from two physicians and one psychiatrist assessing his ability to practice, including any recommendations for treatment as well as any conditions, restrictions or limitations. Appellant obtained evaluations from Navjyot Bedi, M.D., Curtis Markham, M.D., and Ronald Sachs, M.D.  Appellant and the board, however, could not agree on the terms of the Step II agreement.

{¶ 6}  On May 8, 2013, the board issued a notice of opportunity for hearing, informing appellant of the board's intent to determine whether to impose terms, conditions, and/or limitations on his certificate.  On June 27, 2013, a hearing examiner conducted an administrative hearing.  On August 9, 2013, the hearing examiner issued a report recommending that appellant's certificate be reinstated subject to certain probationary terms, conditions, and limitations for a period of at least five years.  The hearing examiner determined that no additional restrictions should be placed on appellant's certificate.

{¶ 7}  On September 12, 2013, the board met and considered the hearing examiner's report.  During this meeting, a board member moved to amend the proposed order to include a permanent limitation regarding the practice of anesthesiology.  The board approved the motion, thereby amending the proposed order to include the following "PERMANENT LIMITATION/RESTRICTION" on appellant's certificate:

> The certificate of Dr. Clark to practice medicine and surgery in the State of Ohio shall be permanently LIMITED and RESTRICTED as follows:
>
> 1. Dr. Clark shall not participate in any anesthesia residency program.
>
> 2. Dr. Clark shall not order or personally administer general anesthesia.
>
> 3. Dr. Clark may order moderate sedation, but he shall not personally administer moderate sedation.

(Emphasis sic.)

{¶ 8}  Appellant filed an appeal with the trial court from the board's order.  By decision and entry filed February 13, 2014, the court affirmed the order of the board.

{¶ 9}  On appeal, appellant sets forth the following four assignments of error for this court's review:

> First Assignment of Error: The Court of Common Pleas erred in finding that the order of the State Medical Board of Ohio was supported by reliable, probative, and substantial evidence and was in accordance with law because the Board's Order imposes a restriction which is not authorized under Ohio law.

Second Assignment of Error: The Court of Common Pleas erred in finding that the order of the State Medical Board of Ohio was supported by reliable, probative, and substantial evidence and was in accordance with law because the Board's Order imposes a permanent limitation/restriction which is not authorized under Ohio law.

Third Assignment of Error: The Court of Common Pleas erred in finding that the order of the State Medical Board of Ohio was supported by reliable, probative, and substantial evidence and was in accordance with law because the Board's Order imposes a restriction not supported by the record and based on a false finding of "conflict of opinion" among the experts who evaluated Appellant.

Fourth Assignment of Error: The Court of Common Pleas erred in finding that the order of the State Medical Board of Ohio was supported by reliable, probative, and substantial evidence and was in accordance with law because the discipline imposed by the Board's Order exceeds the scope of the prior agreement between the parties and is unrelated to anesthesia.

{¶ 10} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant argues the trial court erred in affirming the board's order on grounds that such order (1) imposes a limitation/restriction not authorized by law, (2) unlawfully imposes a permanent limitation/restriction, (3) is based on a false finding of conflict of opinion among experts, and (4) exceeds the scope of the Step I agreement between the parties.

{¶ 11} In an appeal from an order of the medical board, "a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law." *Pons v. State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993), citing R.C. 119.12. An appellate court's review "is even more limited than that of the trial court." *Id.* Specifically, "[w]hile it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, *i.e.*, being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." *Id.* Thus,

"[a]bsent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court." *Id.*

{¶ 12} Appellant first challenges the trial court's affirmance of the board's order imposing a "LIMITATION/RESTRICTION" on his certificate. Appellant contends the board lacks statutory authority to place a "restriction" on a certificate in response to a disciplinary action. According to appellant, if the general assembly wished to allow the board to impose a restriction it would have explicitly included such wording in R.C. 4731.22(B). Appellant further contends that Ohio Adm.Code 4731-13-36 does not contain any explicit reference to the word "restriction."

{¶ 13} R.C. 4731.22(B) authorizes disciplinary actions by the board and states in pertinent part:

> The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
>
> * * *
>
> (26) Impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice.

{¶ 14} Ohio Adm.Code 4731-13-36(D) defines "[l]imitation" as meaning "to preclude the certificate holder from engaging in a particular conduct or activity, to impose conditions on the manner in which that conduct or activity may be performed, or to require the certificate holder to abide by specific conditions in order to continue practicing medicine." Ohio Adm.Code 4731-13-36(D) further provides that "[a] limitation shall be either temporary or permanent."

{¶ 15} In addressing appellant's claim that the board's order imposes a restriction not authorized by law, the trial court noted that appellant was "apparently distinguishing between a restriction and a limitation on a certificate." As to this argument, the court held in part: "Under its express terms, the Board's Order describes the provisions at issue as

both limitations and restrictions. Limitations such as those at issue are expressly permitted by R.C. 4731.22(B). Moreover, the provisions preclude the certificate holder from engaging in particular activity, and thus meet the definition of 'Limitation' under Ohio Admin. Code 4731-13-36(D)."

{¶ 16} We find no error with the trial court's determination on this issue. Black's Law Dictionary defines "limitation" as "[t]he act of limiting; the state of being limited. * * * A restriction." *Black's Law Dictionary* 1012 (9th Ed.2009). It further defines "limit" as "[a] restriction or restraint." In considering the definition of "limitation" under former R.C. 4731.22(B)(22), this court considered the term "in common usage" as "characterized by enforceable restrictions" imposed on the scope or exercise of a privilege. *Gross v. State Med. Bd.*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 36. Here, in the context of the order, we agree with the board's contention that the terms restriction/limitation carry the same meaning, i.e., are used interchangeably. As such, we further agree with the trial court that the board was authorized, under R.C. 4731.22(B), to impose the subject limitation/restriction on appellant's certificate and that the board's order precluding appellant from engaging in a particular activity was not contrary to law.

{¶ 17} We also find unpersuasive appellant's contention that the board issued an order not authorized by law by imposing a "permanent" limitation/restriction. According to appellant, the board's promulgation of Ohio Adm.Code 4731-13-36(D) exceeds its rulemaking authority, impermissibly expanding R.C. 4731.22(L).[1]

{¶ 18} As noted by the trial court, however, R.C. 4731.22(B) "authorizes the Board to limit a certificate to practice, and does not state that any such limitation must be temporary." As further observed by the trial court, Ohio Adm.Code 4731-13-36(D) "expressly provides that a limitation may be either temporary or permanent."

{¶ 19} Appellant's contention that R.C. 4731.22(L) represents the scope of the board's authority for permanent disciplinary action is not persuasive. The general assembly amended R.C. 4731.22 as part of Sub.H.B. No. 605, effective March 9, 1999,

---

[1] R.C. 4731.22(L) states in part: "When the board * * * revokes an individual's certificate to practice * * * or refuses to reinstate an individual's certificate * * *, the board may specify that its action is permanent. An individual subject to a permanent action taken by the board is forever thereafter ineligible to hold a certificate to practice and the board shall not accept an application for reinstatement."

granting the board "the power to levy permanent adverse actions against licensee[s] and applicants and prohibit the physician from applying for reinstatement or a new license." *Richter v. State Med. Bd.*, 161 Ohio App.3d 606, 2005-Ohio-2995 (10th Dist.), ¶ 8, fn 1. Prior to the 1999 amendment, this court had interpreted the authority granted the board under R.C. 4731.22(B) to revoke a physician's license to practice medicine as "includ[ing] the authority to revoke it permanently." *Roy v. State Med. Bd.*, 101 Ohio App.3d 352, 355 (10th Dist.1995). In those earlier cases, however, this court recognized that under "some circumstances a new license may be obtained following revocation." *Id.* The enactment of R.C. 4731.22(L) clarified that the board, when it revokes a certificate, "may specify that its action is permanent" and that a physician subject to a permanent action "is forever thereafter ineligible to hold a certificate to practice."

{¶ 20} Upon review, we agree with the trial court that the statute does not limit the board to merely imposing temporary limitations on certificates. This court has previously noted that "[t]he General Assembly has given the medical board the duty to safeguard the public's interest in having competent, properly trained and educated, and experienced doctors." *Midwestern College of Massotherapy v. State Med. Bd.*, 102 Ohio App.3d 17, 23 (10th Dist.1995). An administrative body "may issue rules and they will be a proper exercise of administrative power provided the rules are not unreasonable, discriminatory, or in conflict with the law." *Id.* R.C. 4731.05(A) authorizes the board to "adopt rules in accordance with Chapter 119. of the Revised Code to carry out the purposes of this chapter." As cited above, R.C. 4731.22 authorizes the board to "limit, revoke, or suspend an individual's certificate to practice," and we find unpersuasive appellant's contention that the board, in enacting the definition of limitation as set forth under Ohio Adm.Code 4731-13-36(D), exceeded its rulemaking authority in providing that a limitation may be permanent.

{¶ 21} Appellant contends under his third assignment of error that the order of the board is based on an erroneous finding that there was a conflict of opinion among the experts who evaluated him. Specifically, appellant notes that Dr. Sachs, in his written communications to the board, recommended that appellant not practice in the field of anesthesiology due to the availability of sedating medications, including Fentanyl. Appellant argues, however, that Dr. Sachs testified during the hearing that the

circumstances did not warrant an absolute restriction from drugs such as Fentanyl. According to appellant, Dr. Sachs' opinion regarding the necessity, or lack thereof, for a permanent restriction cannot be deemed to be in conflict with the other expert evaluators, who either opined it would be safe for him to return to anesthesiology or who expressed no opinion as to any anesthesiology restriction.

{¶ 22} The provision of the board's order at issue states in part: "As set forth in the Findings of Fact, there is a conflict of opinion among the experts who evaluated Dr. Clark with respect to Dr. Clark's return to training in or practicing anesthesiology."  In the hearing examiner's report and recommendation, the hearing examiner noted that Dr. Sachs, in a letter to the board, stated he would not recommend that appellant return to the practice of anesthesiology.  In a subsequent letter, Dr. Sachs opined that appellant should not practice anesthesiology in light of his past dependency on Fentanyl.

{¶ 23} During the administrative hearing, Dr. Sachs was questioned on direct examination as to his opinion "today" regarding a restriction based on alcohol and opioid dependence.  (Tr. 39.)  Dr. Sachs stated: "I think that would change, depending on how someone is doing in recovery."  (Tr. 39.)  When asked whether a restriction on anesthesia would need to be permanent, Dr. Sachs responded: "Not necessarily."  (Tr. 40.)

{¶ 24} The trial court, in addressing appellant's contention that there was no conflict among the experts, cited the July 5, 2011 and April 23, 2013 reports of Dr. Sachs, in which he stated that appellant should not practice anesthesiology due to his past dependency on Fentanyl.  The court concluded that the board "was free to conclude that these opinions were at variance with letters from Dr. Markham and Dr. Bedi suggesting that Dr. Clark could return without restriction."

{¶ 25} Based on a review of the administrative record, we find no abuse of discretion by the trial court.  In addition to the correspondence/reports of Dr. Sachs expressing his opinion that appellant should not practice anesthesiology, we agree with the board that the hearing testimony of Dr. Sachs was not, as asserted by appellant, unequivocal on the issue of restrictions involving drugs such as Fentanyl.  Rather, based on the evidence presented, the board could have reasonably found that Dr. Sachs had concerns about the risks appellant faced practicing in a specialty in which he might have access to, or be in close proximity with, opiate medications on a day-to-day basis.

{¶ 26} Furthermore, notwithstanding appellant's contention that there was no conflict between the evaluators, the board is entitled to rely on its own medical knowledge and expertise in a medical board proceeding. *See Arlen v. State Med. Bd.*, 61 Ohio St.2d 168, 174 (1980). Thus, while "[e]xpert opinion testimony can be presented in a medical board proceeding, * * * the board is not required to reach the same conclusion as the expert witness." *Id.* Instead, "the medical board is quite capable of interpreting technical requirements of the medical field." *Pons* at 623. Further, a reviewing court "must accord due deference to the Board's interpretation of the ethical and legal requirements governing the practice of the medical profession." *Royder v. State Med. Bd.*, 10th Dist. No. 01AP-1365, 2002-Ohio-7192, ¶ 245.

{¶ 27} We also find unpersuasive appellant's contention the board imposed disciplinary terms without any factual foundation. Dr. Sachs testified during the hearing that he recommended in his reports that appellant not return to the practice of anesthesiology due to the availability of Fentanyl. According to Dr. Sachs, "Fentanyl is such an addictive substance that being around it day after day creates a higher frequency of relapse." (Tr. 32.) Dr. Sachs opined that "[i]t would be best if he's not surrounded by Fentanyl day-by-day." (Tr. 35.) According to appellant's own testimony at the hearing, "over the last three months of my drug use it was nearly daily. I mean, as long as I was working and had access to it." (Tr. 54.) Appellant acknowledged that, as with any drug addition, "tolerance develops, so to achieve the same feeling of euphoria * * * more of the drug has to be used." (Tr. 55.) Appellant noted that he "did use more of the medication and eventually began to inject the medication intramuscularly." (Tr. 55.) On the date hospital personnel became aware of appellant's addiction, he was working an anesthesia rotation (i.e., preparing medications for patients) and was "impaired while at work on the morning where it was discovered." (Tr. 57.)

{¶ 28} If the board issues an order that is "supported by reliable, probative, and substantial evidence and is in accordance with law, a reviewing court may not modify a sanction authorized by statute." *Shah v. State Med. Bd.*, 10th Dist. No. 14AP-147, 2014-Ohio-4067, ¶ 17, citing *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959). Based on this court's review of the administrative record, the trial court did not err in finding there was competent, credible evidence supporting the

limitations/restrictions imposed by the board with respect to appellant ordering or personally administering general anesthesia and personally administering moderate sedation.

{¶ 29} Appellant next contends under his fourth assignment of error that the board's order imposes discipline that is beyond the scope of the Step I agreement. According to appellant, the Step I agreement provided that any limitation would only be a requirement that he practice in a field other than anesthesia and that the permanent limitation/restriction under the third prong, providing that appellant "may order moderate sedation, but he shall not personally administer moderate sedation," exceeds that provision.

{¶ 30} Paragraph 16c of the Step I agreement states in part:

> Dr. Clark shall enter into a written consent agreement including probationary terms, conditions and limitations as determined by the Board including the requirement that Dr. Clark shall obtain approval of the Board for any medical practice or employment related to the health care fields, and contingent upon the future assessments conducted pursuant to paragraph 16.b.iv above, potentially including a requirement that Dr. Clark practice in a specialty other than anesthesia if indicated. Dr. Clark shall enter into such written consent agreement within 180 days of the date upon which all of the above-specified conditions for reinstatement or restoration have been completed or * * *, if the Board and Dr. Clark are unable to agree on the terms of a written Consent Agreement, then Dr. Clark further agrees to abide by any terms, conditions and limitations imposed by Board Order after a hearing conducted pursuant to Chapter 119. of the Ohio Revised Code.

{¶ 31} As noted by the trial court, the Step I agreement provided that any subsequent consent agreement would include "probationary terms, conditions and limitations as determined by the Board including the requirement that Dr. Clark shall obtain approval of the Board *for any medical practice or employment related to the health care fields.*" (Emphasis added.) In the instant case, the parties were unable to agree to the terms of a second consent agreement (i.e., the Step II agreement), and, therefore, appellant agreed to "abide by any terms, conditions and limitations imposed by Board Order" following the administrative hearing under R.C. Chapter 119.

{¶ 32} During the administrative hearing, appellant testified that he objected to limitations set forth in the Step II agreement, including language providing that he "may utilize or administer topical anesthesia, local anesthesia, and/or minimal sedation." (Tr. 101.) Appellant expressed concern that such language would limit his ability to order "moderate sedation." (Tr. 102.)

{¶ 33} A review of the minutes of the September 12, 2013 board meeting reflects that the board members addressed appellant's concern on this issue. Specifically, during that meeting, board member Dr. Ramprasad, citing "multiple risk factors," including "underlying problems with anxiety and/or depression," opined that appellant "would be at risk of a relapse if he returned to the practice of anesthesiology." While noting appellant's plans to practice family medicine in Tennessee, Dr. Ramprasad expressed concern that, even though appellant "did not complete his anesthesiology residency and cannot become board-certified in anesthesiology, he could potentially practice anesthesiology if there is no restriction." Dr. Ramprasad, in seeking to amend the proposed order, stated that the proposed amendment "would allow Dr. Clark to order moderate sedation, but would restrict him from administering moderate sedation."

{¶ 34} The board members further considered the "practical effects" of the proposed amendment on appellant's practice. Board member Dr. Steinbergh cited appellant's "testimony that he does not want to limit his ability to provide appropriate patient care in a hospital, emergency department, or urgent care." Dr. Steinbergh offered that "the purpose of the stipulation that Dr. Clark may order, but not personally furnish, moderate sedation is to allow for his possible future practice in these settings." Dr. Steinbergh expressed her support for the proposed amendment "because it protects both Dr. Clark and his patients" by barring him from returning to anesthesiology, but allowing him, "for instance, [to] supervise a nurse anesthetist or similar practitioner."

{¶ 35} Upon review, we agree with the trial court's determination that the Step I agreement does not limit the board's disciplinary options as asserted by appellant. Under the terms of the Step I agreement, appellant agreed to abide by any terms, conditions, and limitations imposed by order of the board following the administrative hearing. Further, as noted above, the record indicates that the board addressed appellant's concerns regarding restrictions on the administration of sedation drugs, changing language in the

proposed Step II agreement to allow him to order moderate sedation.  The minutes of the board meeting reflect the board's efforts to craft an order seeking to safeguard the public and prevent a relapse by appellant, while permitting him to provide appropriate care in the future, and the trial court did not err in finding such order to be in accordance with law.

{¶ 36}  Based on the foregoing, the trial court did not abuse its discretion in holding that the order of the board was supported by reliable, probative, and substantial evidence and was in accordance with law.  Accordingly, we overrule appellant's first, second, third, and fourth assignments of error, and we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

CONNOR, P.J., and TYACK, J., concur.

_____