[Cite as *Angerbauer v. State Med. Bd. of Ohio*, 2017-Ohio-7420.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Steven R. Angerbauer, M.D., | : | |
| Appellant-Appellant, | : | |
| | : | No. 17AP-88 |
| v. | : | (C.P.C. No. 16CV-7014) |
| State Medical Board of Ohio, | : | (ACCELERATED CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on August 31, 2017

**On brief:** *Graff & McGovern, LPA*, and *John A. Izzo*, for appellant. **Argued:** *John A. Izzo*.

**On brief:** *Michael DeWine*, Attorney General, and *Melinda R. Snyder*, for appellee. **Argued:** *Melinda R. Snyder*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Appellant-appellant, Steven R. Angerbauer, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee-appellee, State Medical Board of Ohio ("board"), which permanently denied appellant's application to practice medicine and surgery in Ohio. For the following reasons, we affirm the decision of the court of common pleas.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In December 2013, appellant applied for a license to practice medicine and surgery in the state of Ohio. In his application, appellant disclosed that the Medical Quality Assurance Commission ("commission") of the state of Washington had initiated

an investigation into his medical practice and stated his understanding that the commission initiated the investigation based on a concern raised by a third party that someone may have been forging his signature on prescription scripts.

{¶ 3}   In June 2014, appellant and the commission agreed to resolve the matter by way of an "agreed order" that included stipulated findings of fact and conclusions of law. According to the stipulated findings of fact in the agreed order, between summer 2011 and February 2013, appellant worked as an occupational medicine physician where his practice was "limited to treating federal employees for work-related medical issues." (Agreed Order at 2.)

{¶ 4}   Earlier, in June or July 2011, appellant met a 28-year-old female, "Patient A," at the place of her employment, which the order characterizes as a "Gentlemen's Club." (Agreed Order at 2.)  Patient A told appellant she had chronic lower back pain, did not have money, insurance, or a physician, and needed help.  Appellant maintained a record for Patient A at his home; the record did not document any inquiry into her medical and mental health history, which, according to Patient A, included significant mental health issues and a history of substance abuse.  Appellant examined Patient A at a coffee house, at his home, at a mall tattoo shop where the patient worked, and at a local gas station.  Appellant diagnosed Patient A with chronic lower back pain.  He did not determine the cause of the pain or order imaging or diagnostic tests.

{¶ 5}   From August 2011 to February 2013, appellant prescribed hydrocodone with acetaminophen 10mg/500mg to Patient A on a regular basis.  In the first several months of this period, appellant prescribed 35 to 60 tablets per month to Patient A, an amount that increased to 80 to 120 tablets per month.  When Patient A asked for Percocet, appellant told her he could not prescribe Percocet to her because he would have to sign a prescription.  To prescribe the hydrocodone, appellant called in the prescription to a pharmacy and, rather than speaking to the pharmacist on duty, always left a voice message.  After learning that the commission initiated a complaint, appellant stopped treating and prescribing for Patient A.  At some point, appellant gave Patient A $20 and she used his credit card to pay for one night in a hotel.  Appellant offered to pay for her books when Patient A expressed interest in finishing her GED, and appellant gave Patient A the food in his refrigerator.

{¶ 6} In the agreed order, appellant stipulates that he failed to meet his standard of care in his treatment of Patient A, that Patient A's records did not justify the long-term prescribing of hydrocodone, that he repeatedly prescribed hydrocodone in significant amounts without performing an adequate physical examination or formulating a treatment plan, that he failed to order diagnostic tests or determine the medical cause of her pain, and that he failed to have her sign a pain management agreement or take other steps to prevent diversion of the medication. As a finding of fact, appellant agreed that he violated pain management administration rules in several respects and breached the standard of care by violating appropriate physician-patient boundaries in his relationship with Patient A.

{¶ 7} According to the agreed order, the parties agreed as "conclusions of law" that appellant violated two sections of the state of Washington's "unprofessional conduct" statute—Section 4, involving incompetence, negligence, or malpractice which results in injury to a patient or which creates an unreasonable risk of harm, and Section 7, involving a violation of any statute or administrative rule regulating the profession—and violated several sections of Washington's administrative code involving patient evaluation, treatment plans, informed consent, and written agreements for treatment. (Agreed Order at 4, 5.) Washington R.C. 18.130.180; Washington Adm.Code Sections 246-919-853 to 856.

{¶ 8} These violations provided grounds for imposing sanctions under Washington R.C. 18.130.160, "Tier B," as appellant's care of Patient A "created a risk of moderate to severe harm." (Agreed Order at 8.) After finding appellant's record of no prior discipline and his expressed remorse as mitigating factors, the commission imposed sanctions at the minimum range under Tier B, including: monitoring of appellant's license for a period of two and one-half years, course work on ethics, physician-patient boundaries, medical record keeping, opioid prescribing, registration with the Washington Prescription Monitoring Program on his license renewal, and a fine. The agreed order states that if appellant violates the order in any respect, "the Commission may initiate further action against [appellant's] license." (Agreed Order at 7.) Furthermore, the agreed order states:

> Protection of the public requires practice under the terms and conditions imposed in this order. Failure to comply with the terms and conditions of this order may result in suspension of the license after a show cause hearing. If [appellant] fails to comply with the terms and conditions of this order, the Commission may hold a hearing to require [appellant] to show cause why the license should not be suspended. Alternatively, the Commission may bring additional charges of unprofessional conduct.

(Agreed Order at 8-9.)

{¶ 9} In July 2014, appellant sent an e-mail to an enforcement attorney for the board asserting that "[w]ith respect to Patient A, the Commission's allegations were not based on any improper treatment or care with narcotics, but rather were based solely on the lack of strict medical record compliance with [Washington's new] pain management guidelines," indicating that his treatment of Patient A was reasonable and "resulted in substantial amelioration," and "[c]learly, Patient A benefitted greatly from her treatment and care, and was not harmed in any manner." (July 17, 2014 E-mail/State Hearing Ex. 4.) Appellant then contends that "[t]hrough this process, I have realized how I could have more appropriately managed the care of Patient A within the strict scope of the pain management guidelines" and the situation "has been a valuable learning experience." (July 17, 2014 E-mail/State Hearing Ex. 4.)

{¶ 10} By letter dated August 13, 2014, the board sent appellant a notice of opportunity for hearing, alleging that the board had reason to believe the action taken by the state of Washington on his license was a violation of R.C. 4731.22(B)(22). On April 15, 2016, a hearing on the matter was held.[1] Appellant did not personally appear at the hearing but instead submitted a 17-page written statement pursuant to R.C. 119.07. In his written statement, appellant states that the discipline imposed by the commission centered on his violation of physician-patient boundaries and violations of "newly enacted pain management rules." ([Appellant's] Ex. 1.) In regard to the physician-patient boundaries, appellant noted that, at the time he was treating Patient A, he honestly

---

[1] The board initially considered appellant's application on December 10, 2014 and permanently denied his application based on the agreed order. Appellant appealed to the common pleas court asserting that he had timely requested a hearing, and the parties agreed to settle that appeal. The common pleas court thereafter remanded the matter back to the board for an administrative hearing.

believed he was acting in the best interest of his patient "exemplifying the ideal physician virtues of caring, sympathy, compassion, understanding, respect, empathy, accommodation, availability, personable, approachable, non-bias, and self-effacement," and now he realizes he should have referred her to other resources. ([Appellant's] Ex. 1.) In regard to prescribing, appellant writes "I was at fault [in record keeping] because I did not keep up on the changes in Washington law that occurred while I was treating Patient A." ([Appellant's] Ex. 1.) Appellant asserts in his letter that he was not under any restriction against treating patients outside of his employment so long as no conflict of interests were present.

{¶ 11} On June 10, 2016, the hearing examiner issued a report and recommendation finding that the Washington agreed order established a violation of R.C. 4731.22(B)(22). Appellant filed objections to the report and recommendation of the hearing examiner. The board considered appellant's application at the July 13, 2016 board meeting and, thereafter, the board issued its entry of order permanently denying a license to appellant.

{¶ 12} Appellant appealed to the Franklin County Court of Common Pleas and moved the court for a finding in his favor under R.C. 119.12(I) alleging the board intentionally failed to provide a copy of the transcript of the July 13, 2016 board meeting rather than minutes of the hearing (which were provided by the board). On October 25, 2016, the common pleas court denied appellant's motion. On January 5, 2017, the common pleas court affirmed the board's entry of order permanently denying appellant's application for an Ohio medical license. In doing so, the common pleas court determined that the agreed order "limited" and imposed "probation" on appellant's license under R.C. 4731.22(B)(22) and that appellant's argument regarding receiving a harsher sentence than similarly situated individuals lacked merit. (Jan. 5, 2017 Decision at 10.)

{¶ 13} Appellant filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant presents five assignments of error:

> [1.] The common pleas court abused its discretion when it denied Dr. Angerbauer's request to enter a finding in his favor because the Board intentionally failed to file a transcript of the July 13, 2016, proceeding.

[2.] The common pleas court abused its discretion when it determined the Board's Order was in accordance with law because the Washington Agreed Order does not give the Board the authority to pursue disciplinary action under R.C. 4731.22(B)(22).

[3.] The common pleas court abused its discretion when it determined the Board's Order was based on reliable, probative, and substantial evidence, and in accordance with law.

[4.] The common pleas court abused its discretion when it determined the Board's Order was based upon reliable, probative, and substantial evidence.

[5.] The common pleas court abused its discretion because the Board's Order is not in accordance with law. The Board treated Dr. Angerbauer's actions in the State of Washington differently than it has treated physicians in Ohio, in violation of the equal protection clause and the commerce clause.

## III. STANDARD OF REVIEW

{¶ 15} Under R.C. 119.12, a common pleas court, in reviewing an order of an administrative agency, must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). The Supreme Court of Ohio has defined the concepts of reliable, probative, and substantial evidence as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.

(2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.

(3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 16} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the

court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " (Emphasis sic.) *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. *Leak v. State Med. Bd.*, 10th Dist. No. 09AP-1215, 2011-Ohio-2483, ¶ 8, *appeal not allowed*, 129 Ohio St.3d 1505, 2011-Ohio-5258 ("[W]hen reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession."). The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), citing R.C. 119.12.

{¶ 17} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.* Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Id.* The term abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An appellate court, however, has plenary review of purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. DISCUSSION

### A. First Assignment of Error

{¶ 18} Under the first assignment of error, appellant contends the common pleas court abused its discretion when it denied appellant's request to enter a finding in his favor, pursuant to R.C. 119.12(I), because the board intentionally failed to file a transcript of the July 13, 2016 board meeting. We disagree.

{¶ 19} Pursuant to R.C. 119.12(I), after a notice of appeal from an agency's order is filed with the common pleas court, the agency must, within 30 days after receipt of the notice, "prepare and certify to the court a complete record of the proceedings in the case."

"A 'complete record of proceedings' in a case is a 'precise history' of the administrative proceedings from their commencement to their termination." *Beach v. Ohio Bd. of Nursing*, 10th Dist. No. 10AP-940, 2011-Ohio-3451, ¶ 21, quoting *Checker Realty Co. v. Ohio Real Estate Comm.*, 41 Ohio App.2d 37, 42 (10th Dist.1974). A complete record of proceedings includes a stenographic record of hearings in certain circumstances. *Citizens for Akron v. Ohio Elections Comm.*, 10th Dist. No. 11AP-152, 2011-Ohio-6387. As we stated in *Citizens for Akron* at ¶ 25:

> R.C. 119.09, titled "Adjudication hearing," sets forth the provisions governing adjudication hearings before agencies. The statute provides that, where the record of an adjudication hearing may be the basis of an appeal, "a stenographic record of the testimony and other evidence submitted shall be taken at the expense of the agency." A "stenographic record" is "a record provided by stenographic means or by the use of audio electronic recording devices." R.C. 119.09. An agency is not required to make a stenographic record of every adjudication hearing. Rather, in any situation where R.C. 119.01 through 119.13 requires an adjudication hearing, "if an adjudication order is made without a stenographic record of the hearing, the agency shall, on request of the party, afford a hearing or rehearing for the purpose of making such a record which may be the basis of an appeal to court." *Id.*

{¶ 20} In this case, appellant was provided notice that a court reporter would not be present at the board meeting and that the board's minutes would serve as the official record of the meeting, but he made no objection to the lack of a transcript to the board at any time during the hearing. On his appeal, the board then provided in the certified record a transcript of the April 15, 2016 hearing and six pages of detailed minutes from the July 13, 2016 board meeting. The common pleas court denied appellant's R.C. 119.12(I) motion, finding that the July 13, 2016 meeting is clearly not an "adjudication hearing" which would impose a duty on the board to provide a transcript and that no authority supports appellant's claim that the board minutes were not sufficient. The common pleas court notes that appellant never truly addressed the question of whether he was harmed by having minutes, rather than the transcript, in the record.

{¶ 21} On appeal here, appellant again argues that he is entitled to a finding in his favor under R.C. 119.12(I) because the board failed to certify a "complete" record of his

case when it failed to file a transcript of the July 13, 2016 board meeting. According to appellant, the board was required to transcribe the meeting and file it as part of the certified record under R.C. 119.09 because the board meeting on July 13, 2016 fits the definition of an "adjudication hearing" under R.C. 119.01.

{¶ 22} First, by failing to object to the absence of a court reporter at any time prior to or during the board meeting, appellant has waived this issue. *Ferrari v. State Med. Bd.*, 9th Dist. No. 3474 (June 22, 1983), citing *State ex rel. Vaughn v. Indus. Comm.*, 69 Ohio St.2d 115, 118 (1982). *See Jain v. State Med. Bd.*, 10th Dist. No. 09AP-1180, 2010-Ohio-2855, ¶ 10 ("A party generally waives the right to appeal an issue that could have been, but was not, raised in earlier proceedings.").

{¶ 23} Second, even if appellant did not waive this issue, we disagree with the merits of appellant's argument regarding the board meeting constituting an adjudication hearing. "Adjudication" means "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person." R.C. 119.01(D). "Hearing" means "a public hearing by any agency in compliance with procedural safeguards" afforded by R.C. 119.01 to 119.13. R.C. 119.09 describes an adjudication hearing as a proceeding where witnesses are interviewed, evidence is produced, and which may generate a written report and recommendation by an examiner and corresponding objections for the board's consideration. Furthermore, although the board is obligated to prepare and publish minutes of its meetings, it is not generally obligated to transcribe its meetings. R.C. 121.22(C); Ohio Adm.Code 4731-9-01; *Mahajan v. State Med. Bd.*, 10th Dist. No. 11AP-421, 2011-Ohio-6728, ¶ 9, 25-31 (discussing adequacy of board meeting minutes under Ohio's open meeting law and overruling appellant's assignment of error contending the board deprived him of a full and fair record of a board meeting under R.C. 119.09); *Ferrari* (finding that certification of six pages of detailed minutes of its board meeting rather than a stenographic transcript did not render the record of the proceedings incomplete). On this record, we agree with the common pleas court that an adjudication hearing in this case occurred before the hearing examiner on April 15, 2016 and that the record does not otherwise show that the board meeting in this case constitutes an adjudication hearing.

{¶ 24} Finally, as noted by the common pleas court, appellant has not indicated how he was prejudiced by the inclusion of the board meeting minutes rather than a transcript in this case.  As a result, appellant is not entitled to a finding in his favor under R.C. 119.12.  *Beach* at ¶ 23-24; *McGee v. State Bd. of Psychology*, 82 Ohio App.3d 301, 305-06 (10th Dist.1993), quoting *Lorms v. State*, 48 Ohio St.2d 153 (1976), syllabus (" 'An agency's omission of items from the certified record of an appealed administrative proceeding does not require a finding for the appellant, pursuant to R.C. 119.12, when the omissions in no way prejudice him in the presentation of his appeal.' ").  Therefore, considering all the above, we find the common pleas court did not abuse its discretion in denying appellant's motion to enter finding in his favor.

{¶ 25} Accordingly, we overrule appellant's first assignment of error.

## B.  Second Assignment of Error

{¶ 26} Under the second assignment of error, appellant contends, essentially, that the board's order was not in accordance with law, and it acted without authority because the agreed order does not constitute an action enumerated in R.C. 4731.22(B)(22).  For the following reasons, we disagree.

{¶ 27} R.C. 4731.22(B) states in pertinent part:

> The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law * * * refuse to issue a certificate to an individual * * * for one or more of the following reasons:
>
> * * *
>
> (22) Any of the following actions taken by an agency responsible for authorizing, certifying, or regulating an individual to practice a health care occupation or provide health care services in this state or another jurisdiction, for any reason other than the nonpayment of fees: the limitation, revocation, or suspension of an individual's license to practice; acceptance of an individual's license surrender; denial of a license; refusal to renew or reinstate a license; imposition of probation; or issuance of an order of censure or other reprimand.

{¶ 28} In determining whether the action of a medical board of another state falls under R.C. 4731.22(B)(22), we ask whether the language of the out-of-state action can reasonably be interpreted as one of the enumerated actions in R.C. 4731.22(B)(22). *Gross v. State Med. Bd.*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 27-38 (referencing the existence of definitions under Ohio law and common usage to determine whether an agreed order from Colorado met the definition of an action of "limitation" in R.C. 4731.22(B)(22)). The action of a medical board of another state need not expressly name the actions in R.C. 4731.22(B)(22) to authorize the board to act under that section. *Id.*

{¶ 29} The common pleas court in this case found the agreed order from the state of Washington constituted a "limitation" and "probation" for purposes of R.C. 4731.22(B)(22). The administrative code covering disciplinary actions under Ohio Adm.Code Chapter 4731 provides the following definition of limitation:

> "Limitation" means to preclude the certificate holder from engaging in a particular conduct or activity, to impose conditions on the manner in which that conduct or activity may be performed, or to require the certificate holder to abide by specific conditions in order to continue practicing medicine. A limitation shall be either temporary or permanent.

Ohio Adm.Code 4731-13-36(D). In *Gross*, the court found that in the context of R.C. 4731.22(B)(22), "the term 'limitation' reasonably may be construed as referencing an action taken by a medical licensing agency in another jurisdiction that imposed an enforceable restriction upon the scope or exercise of a person's medical license." *Id.* at ¶ 36.

{¶ 30} In addition, the Ohio Administrative Code provides the following definition of probation in pertinent part:

> "Probation" means a situation whereby the certificate holder shall continue to practice only under conditions specified by the board. Failure of the certificate holder to comply with the conditions of probation may result in further disciplinary action being imposed by the board. The probation period shall be for either a definite or an indefinite term.

Ohio Adm.Code 4731-13-36(E).

{¶ 31} The agreed order between appellant and the commission states violations of Washington statutes and administrative code sections governing medical licensing and imposes sanctions including monitoring of appellant's license for a period of two and one-half years, course work on ethics, physician-patient boundaries, medical record keeping, opioid prescribing, registration with the Washington Prescription Monitoring Program on his license renewal, and a fine. The agreed order states that if appellant violates the order in any respect, "the Commission may initiate further action against [appellant's] license." (Agreed Order at 7.) Furthermore, the agreed order states:

> Protection of the public requires practice under the terms and conditions imposed in this order. Failure to comply with the terms and conditions of this order may result in suspension of the license after a show cause hearing. If [appellant] fails to comply with the terms and conditions of this order, the Commission may hold a hearing to require [appellant] to show cause why the license should not be suspended. Alternatively, the Commission may bring additional charges of unprofessional conduct.

(Agreed Order at 8-9.)

{¶ 32} The agreed order in this case required appellant to abide by specific conditions in order to continue practicing medicine and imposed an enforceable restriction on the scope or exercise of his medical license. Furthermore, the agreed order specified that appellant's ability to practice medicine could occur only under conditions specified by the board and that failure to comply with the conditions may result in further disciplinary action being imposed by the board. As such, we find the language of the agreed order can reasonably be interpreted as a limitation or probation for purposes of R.C. 4731.22(B)(22) to support the board's action in this case. Therefore, the common pleas court did not abuse its discretion when it determined the board's order was in accordance with law.

{¶ 33} Accordingly, we overrule appellant's second assignment of error.

**C. Third Assignment of Error**

{¶ 34} Under the third assignment of error, appellant contends the trial court abused its discretion when it determined the board's order was based on reliable, probative, and substantial evidence, and is accordance with law. Under this assignment

of error, appellant essentially argues that a due process violation occurred because he was denied a meaningful and fair hearing due to incorrect and improper evidence that was presented to the hearing examiner and board members. For the following reasons, we disagree.

{¶ 35} Procedural due process is not a technical concept but, rather, concerns basic fairness. *Gross* at ¶ 20. "The fundamental requirement of procedural due process is notice and hearing, that is, an opportunity to be heard." *Korn v. State Med. Bd.*, 61 Ohio App.3d 677, 684 (10th Dist.1988). "Where a physician is fully apprised of the violations being considered by the board and is given a full opportunity to respond before an impartial board, due process has been satisfied." *Bouquett v. State Med. Bd.*, 123 Ohio App.3d 466, 474-75 (10th Dist.1997), citing *Korn*; *In re Vaughn*, 10th Dist. No. 95APE05-645 (Nov. 30, 1995).

{¶ 36} Appellant makes a multitude of arguments in support of his due process argument. He first contends evidence that is more prejudicial than probative, specifically Patient A's age and employer, was used against him and that a case the board referenced at the board meeting that involved a sexual relationship with a patient should not have been used as a point of comparison. To appellant, this left "the impression that this case dealt with a physician who had sex with a twenty-eight-year old female who worked at a gentleman's club." (Appellant's Brief at 26.) However, Patient A's age and employment were facts stipulated to in the agreed order, and, as appellant himself states, the prosecuting attorney was quick to point out that this case did not involve a sexual relationship with a patient.

{¶ 37} Appellant next contends he was "berated in absentia" for not appearing at the adjudication hearing, and the board used his silence to prejudice the board against him, when the law clearly allows for a hearing held in his absence and a written statement pursuant to R.C. 119.07. (Appellant's Brief at 26.) Relatedly, appellant contends the board misspoke by saying it could not subpoena appellant because he lived out of state. Appellant believes this left the board with the impression that he must come before the board, otherwise his application should be permanently denied.

{¶ 38} We agree that appellant was within his rights to submit a written statement instead of appearing at the hearing himself and that at the board meeting, the board

expressed frustration with receiving a written statement five minutes prior to the hearing when, in the board's view, that hearing was planned to accommodate appellant's presence, and the board compared his silence to invoking the Fifth Amendment in a civil case. However, nothing in the record suggests the board was unaware of appellant's right to submit a written statement, based its finding of a violation of R.C. 4731.22(B)(22) on anything but the agreed order and the language of that law, or believed that appellant's lack of personal appearance at the hearing demanded a sanction of permanent denial of his license. To the contrary, the board expressly considered non-permanent options.

{¶ 39} Appellant further contends that several prejudicial mistakes were made about the evidence. For example, appellant believes the board incorrectly stated that appellant failed to inquire into Patient A's medical history. However, appellant made this argument to the board, and a board member commented that appellant's inquiry into Patient A's medical history without accompanying documentation would arguably be worse, wondering "why a physician would not document such a compelling mental health and substance abuse history if he or she is contemplating a long-term prescription of narcotic medication." (Board Minutes at 23355.) In other words, even if the board's characterization of this point of evidence was not precisely in line with the agreed order, it was not prejudicial. Appellant also takes issue with the board suggesting appellant would contribute to the prescription drug epidemic, when the Washington agreed order was based only on appellant's conduct with one patient. We do not agree that this statement would constitute a mistake about the evidence.

{¶ 40} Relatedly, appellant contends that one board member swayed the other members to believe appellant was an example of someone who should never practice medicine in Ohio. The board member at issue expressed his opinion that appellant is an example of a person who should never practice medicine in Ohio based on evidence in the agreed order that appellant is a calculating individual with no problem prescribing up to 120 tablets per month to a patient with a history of substance abuse and mental health issues and based on appellant's written statement comparing his conduct with ideal physician virtues. However, other board members were free to form their own opinions regarding appellant's case, and even if they were swayed, appellant fails to explain how one board member's persuasive opinion amounts to a due process violation.

{¶ 41} The board minutes indicate the board members based their decision on the facts in evidence and not on alleged "inaccurate" and "unreliable" evidence, "misconceptions" and "sensational characterizations," or appellant's lack of personal appearance. (Appellant's Brief at 32.) Considering all the above, we find that contrary to appellant's argument, he was afforded a hearing consistent with due process, and the common pleas court did not abuse its discretion when it determined the board's order was based on reliable, probative, and substantial evidence and was in accordance with law.

{¶ 42} Accordingly, we overrule appellant's third assignment of error.

### D. Fourth Assignment of Error

{¶ 43} Appellant's fourth assignment of error, although phrased nearly identically to the third assignment of error, challenges the common pleas court's review of the board order. For the following reasons, we disagree with appellant.

{¶ 44} Appellant specifically argues that the common pleas court created facts to support its decision to support the board's order. He argues that he was not an occupational medicine physician who worked for the federal government but, rather, worked for HPM Corporation treating employees of the federal government and that nothing in the agreed order states he was contractually limited by this employment. Appellant takes issue with the common pleas court's characterization of his examinations of Patient A as "cursory," that she "purportedly" suffered from "lower back pain," and it emphasized that appellant "only" stopped treating Patient A when a complaint was filed. (Appellant's Brief at 33, 34.) Appellant further believes that the common pleas court suggests the state of Washington found appellant knew he was doing something improper and states that appellant did not admit to calling pharmacies at a time when he would not have to speak with anyone. Finally, appellant takes issue with the common pleas court's "position that this was more than just a record keeping case" and its "inappropriate" characterization of appellant's written statement as a "multipage treatise on self-delusion or an artful attempt to sound contrite while purposefully not admitting to any personal fault or mistake." (Appellant's Brief at 34, 35.)

{¶ 45} Even if, for the sake of argument, appellant's characterizations of the common pleas court opinion are true, nothing raised by appellant constitutes reversible error. As explained below, none of the evidence referenced above is relevant to the

board's order finding a violation of R.C. 4731.22(B)(22) but, rather, bears on mitigation and aggravation of the sanction imposed by the board, considerations outside the scope of the common pleas court's review.

{¶ 46} Under Ohio law, if the common pleas court concludes that the board's order was supported by reliable, probative, and substantial evidence, it is precluded from modifying the penalty imposed if the penalty was authorized by law. *Demint v. State Med. Bd.*, 10th Dist. No. 15AP-456, 2016-Ohio-3531, ¶ 63, citing *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), paragraphs two and three of the syllabus. As we stated in *Demint*:

> The board has the authority to impose a wide range of sanctions, pursuant to R.C. 4731.22, ranging from reprimand to revocation. The board has the authority to restrict a physician's license permanently. *Clark v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-212, 2015-Ohio-251. * * * The discretion granted to the board in imposing a wide range of potential sanctions reflects the deference due to the board's expertise in carrying out its statutorily granted authority over the medical profession.

*Id.* at ¶ 63. *See also Lindner v. Ohio Liquor Control Comm.*, 10th Dist. No. 00AP-1430 (May 31, 2001) ("As a practical matter, courts have no power to review penalties meted out by the commission. Thus, we have little or no ability to review a penalty even if it seems on the surface to be unreasonable or unduly harsh.").

{¶ 47} Here, as expanded on in the second assignment of error, we have already concluded that the common pleas court did not abuse its discretion when it determined the board's order regarding a violation of R.C. 4731.22(B) was in accordance with law. The common pleas court reviewed the board's decision on R.C. 4731.22(B) by referencing only the agreed order; appellant makes no argument that the agreed order is not reliable, probative, and substantial evidence to support a violation of R.C. 4731.22(B).

{¶ 48} Under Ohio law, once a violation of R.C. 4731.22(B) is properly determined, the board is authorized by law to refuse to issue a certificate to an individual and "may specify that its action is permanent." R.C. 4731.22(L). Thus, the board's sanction of permanent denial of appellant's license is authorized by law, and the common pleas court could not modify the penalty imposed. *Henry's Café, Inc.* Considering all the above, the

common pleas court did not abuse its discretion when it determined the board's order was based on reliable, probative, and substantial evidence, and appellant's argument to the contrary is without merit.

{¶ 49} Accordingly, we overrule appellant's fourth assignment of error.

### E. Fifth Assignment of Error

{¶ 50} Under the fifth assignment of error, appellant contends the board violated the Equal Protection Clause by treating him, an out-of-state applicant, differently than similarly situated in-state licenses. We disagree.

{¶ 51} The equal protection clauses of the United States and Ohio Constitutions prohibit " ' "governmental decision makers from treating differently persons who are in all relevant respects alike." ' " *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, ¶ 16, quoting *Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, ¶ 30, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Where a plaintiff maintains that a statute constitutional on its face nonetheless has been applied in a discriminatory manner in his case, the plaintiff must allege both that the state treated the plaintiff differently from others similarly situated and that no rational basis exists for such difference in treatment. *Myers v. Columbus Civ. Serv. Comm.*, 10th Dist. No. 07AP-958, 2008-Ohio-3521, ¶ 18. In this first step, a plaintiff must produce evidence that the relevant comparison employees are similarly situated in all relevant respects. *Id.* at ¶ 19. Once a showing of discriminatory treatment is made, the plaintiff next must demonstrate the government action against him lacks a rational basis. *Id.*

{¶ 52} As the basis for his equal protection claim, appellant points out several cases where physicians allegedly received more lenient discipline from the board. The common pleas court determined that no case cited to by appellant showed a similarly situated individual, and no "standard sanctions" were revealed by the cases provided as a comparison point. (Jan. 5, 2017 Decision at 11.) We agree that the cases cited by appellant fall short of demonstrating the requisite relevant comparison: in addition to factual differences in the physicians' conduct, none of the cases cited by appellant involve applicants for a medical license. *Myers* at ¶ 20; *see also In re Vaughn* (finding that where a physician offers no evidence to support a claim of discrimination other than a list of other physicians who received lesser sanctions, no equal protection violation is shown).

We likewise note that the board presented its own cases showing it acted similarly in the past.  Moreover, even had appellant been able to prove he was treated differently from those similarly situated, he failed to demonstrate his treatment lacked a rational basis.

{¶ 53}  Accordingly, we overrule appellant's fifth assignment of error.

## V.  CONCLUSION

{¶ 54}  Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and BRUNNER, J., concur.

_____