[Cite as *Menkes v. State Med. Bd. of Ohio*, 2020-Ohio-4656.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Alan L. Menkes, D.O., | : | |
| Appellant-Appellee, | : | No. 19AP-476 (C.P.C. No. 17CV-3982) |
| v. | : | |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee-Appellant. | : | |

D E C I S I O N

Rendered on September 29, 2020

**On brief**: *Dinsmore & Shohl, LLP*, *Eric J. Plinke*, and *Daniel S. Zinsmaster*, for appellee. **Argued**: *Eric J. Plinke*.

**On brief**: *Dave Yost*, Attorney General, *Katherine Bockbrader*, and *Kyle C. Wilcox*, for appellant. **Argued**: *Katherine Bockbrader*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Appellant, the State Medical Board of Ohio ("board" or "Ohio board"), appeals from a judgment of the Franklin County Court of Common Pleas reversing the board's order reprimanding appellee, Alan L. Menkes, D.O. ("Dr. Menkes"). For the reasons which follow, we affirm in part and reverse in part.

{¶ 2} Dr. Menkes received a license to practice osteopathic medicine and surgery in Ohio in 1967. In 1990, Dr. Menkes' Ohio medical license expired due to non-renewal. On July 23, 2015, Dr. Menkes submitted an application to the board seeking to restore his Ohio medical license.

{¶ 3} Dr. Menkes has been employed in a variety of positions throughout his long career in the medical profession. Since 2013, however, Dr. Menkes has been practicing telemedicine for his employer, MD Live, Inc. As a telemedicine physician, Dr. Menkes consults with patients over the phone or by video and is able to diagnose minor conditions, make recommendations, and provide prescription refills. In 2014 and 2015, Dr. Menkes sought medical licenses in several states in order to expand his telemedicine practice. Dr. Menkes noted on his Ohio application for license restoration that he would be practicing "telemedicine only" in Ohio. (Appellee's Ex. A.)

{¶ 4} The application for license restoration asked Dr. Menkes to list "ALL states/provinces in which you hold or have held a license to practice medicine and surgery * * * whether the license is current or not." (Emphasis sic.) (Appellee's Ex. A.) In response to the question, Dr. Menkes listed his medical licenses in the following states: Arizona, California, Colorado, Florida, Hawaii, Idaho, Iowa, Michigan, Nevada, New York, Ohio, and Washington. Dr. Menkes did not list his expired Oregon medical license in his response to the question. Dr. Menkes also answered "no" to question seven on the application, which asked whether any "board" had "in any way limited * * * any professional license, certificate or registration granted" to him. (Appellee's Ex. A.) Dr. Menkes executed an affidavit averring the statements made in the application were true and complete.

{¶ 5} In 1986, Dr. Menkes was in a motor vehicle accident which caused a herniated disc in his spine. Dr. Menkes had neurosurgery to attempt to repair the herniated disc in 1987, but the neurosurgery "went bad." (Hearing Tr. at 55.) As a result, Dr. Menkes suffers from a permanent condition which causes weakness, muscle atrophy, and tremors in his hands. The tremors affect Dr. Menkes' "fine grasp control for instrumentation." (Hearing Tr. at 56.)

{¶ 6} Prior to the motor vehicle accident, Dr. Menkes had been working in hospitals as an osteopathic intensivist. Dr. Menkes had an insurance policy at that time termed a "Usual ('OWN') Occupation Policy," which would pay benefits if Dr. Menkes was "unable to perform the substantial duties of [his] occupation." (Appellee's Ex. I.) Following the accident and unsuccessful neurosurgery, Dr. Menkes filed a claim under his insurance policy and began receiving payments. Dr. Menkes explained that although his injury

"limited [his] hospital work in invasive procedures," it did "not limit [his] office practice." (Hearing Tr. at 56.)

{¶ 7} Dr. Menkes received a license to practice medicine in Oregon in 1978. Although Dr. Menkes worked predominantly in California throughout the 1980s, in 1988 Dr. Menkes wanted to cover a colleague's practice in Oregon for a couple of weeks. On October 20, 1988, Dr. Menkes submitted a document to the Oregon Board of Medical Examiners[1] ("Oregon board") requesting a limitation of his medical license pursuant to Oregon Revised Statute ("O.R.S.") 677.410. The document stated as follows:

> I, ALAN L. MENKES, D.O., in accordance with the provisions of ORS 677.410, do voluntarily request the following LIMITATION be placed upon my license:
>
> 1. I shall limit my medical practice to that of an office based practice only.
>
> I understand that this Limitation will remain in force and effect until terminated by the Board and failure to comply with terms of this Limitation may be grounds for disciplinary action by the Board.

(State's Ex. 3.)

{¶ 8} Dr. Menkes explained that the purpose of requesting the voluntary limitation was "to backup [his] disability." (Hearing Tr. at 75.) Following a hearing, the Oregon board decided to approve Dr. Menkes' "request for a voluntary limitation under ORS 677.410, limiting him to office practice only." (Appellee's Ex. F.) Dr. Menkes' Oregon medical license expired in 1994.

{¶ 9} On April 13, 2016, the Ohio board notified Dr. Menkes it proposed to refuse to reinstate his medical license or take other disciplinary action against him. The board further informed Dr. Menkes that his failure to list his Oregon medical license on the Ohio application for license restoration and his negative answer to question seven on the application constituted false, fraudulent, deceptive, or misleading statements in violation of R.C. 4731.22(B)(5).

---

[1] The Oregon Board of Medical Examiners is now the Oregon Medical Board. References to the Oregon board throughout this decision refer either to the Oregon Board of Medical Examiners or the Oregon Medical Board interchangeably depending on the relevant timeframe.

{¶ 10} On November 14, 2016, the board's hearing examiner conducted a hearing on the matter. Dr. Menkes explained at the hearing that Misty deBlois, a licensing expert employed by MD Live, Inc., filled out the state licenses section on the Ohio application using his curriculum vitae ("CV"). Dr. Menkes could not provide "an exact date when [his CV] was last completed or updated," but acknowledged that the section of his CV identifying his various state medical licenses did not contain "the word 'Oregon.' " (Hearing Tr. at 21; Appellee's Ex. D.) Thus, Dr. Menkes explained his Oregon medical license was "inadvertently" omitted from the Ohio application "or Misty didn't do it. It wasn't deliberate. She used it from [his] CV and obviously [he] didn't have it on [his] CV. It wasn't intentional." (Hearing Tr. at 71.) Dr. Menkes affirmed that he reviewed the application before submitting it to the board.

{¶ 11} Dr. Menkes explained he answered "no" to question seven on the application because he had "asked for the [voluntary] limitation and that's how [he] interpreted it. The [Oregon] Board didn't come up with it. * * * They ratified [his] request to limit [his] practice." (Hearing Tr. at 50.) Dr. Menkes affirmed that Oregon was "the only state where [he had] ever entered into a limitation" on his license. (Hearing Tr. at 69.)

{¶ 12} Evidence presented at the hearing demonstrated Dr. Menkes submitted an application to the Oregon board on November 4, 2014 seeking to reactivate his Oregon medical license.  On January 20, 2015, an Oregon board compliance officer wrote a letter to Dr. Menkes informing him that if he was "requesting that the Board terminate the 1988 Voluntary Limitation" he needed to "submit a written request stating that and fully explain what has changed to negate the original need for the Voluntary Limitation." (Appellee's Ex. F.) Dr. Menkes explained at the hearing that he could not reactivate his Oregon medical license or remove the voluntary limitation because he could not provide the Oregon board with "a statement that [he had] returned to [his] condition prior to [his] accident." (Hearing Tr. at 53.) On May 4, 2016, the Oregon board granted Dr. Menkes' request to withdrawal his Oregon application for licensure.

{¶ 13} On February 9, 2017, the hearing examiner issued a report and recommendation. The hearing examiner determined that the Oregon voluntary limitation constituted a violation of R.C. 4731.22(B)(22), and that Dr. Menkes' failure to list his Oregon medical license on the Ohio application constituted a violation of R.C.

4731.22(B)(5). However, as the hearing examiner found Dr. Menkes' explanation for his response credible, the hearing examiner concluded that Dr. Menkes' negative answer to question seven did not amount to a violation of R.C. 4731.22(B)(5). The hearing examiner recommended that the board grant Dr. Menkes' application for restoration of his certificate to practice osteopathic medicine and surgery in Ohio and reprimand Dr. Menkes for violating R.C. 4731.22(B)(22) and (5).

{¶ 14} The board adopted the hearing examiner's report and recommendation at its April 12, 2017 meeting, and issued an order granting Dr. Menkes' application for restoration of his Ohio medical license and reprimanding Dr. Menkes. Dr. Menkes appealed the board's order to the common pleas court.

{¶ 15} On July 11, 2017, Dr. Menkes filed a brief in the common pleas court asserting the board's order was contrary to law and was not supported by reliable, probative, and substantial evidence. The board filed a brief in response to Dr. Menkes' contentions on July 20, 2017.

{¶ 16} On July 1, 2019, the common pleas court issued a decision and judgment entry affirming in part and reversing in part the board's order. The court held that the board's order reprimanding Dr. Menkes, pursuant to R.C. 4731.22(B)(22), was contrary to law, as the Oregon board "merely accepted [Dr. Menkes'] request to voluntarily self-limit his Oregon medical license to an office practice." (Decision at 14.) The court further concluded the board's order reprimanding Dr. Menkes for having violated R.C. 4731.22(B)(5) was not supported by reliable, probative, and substantial evidence. As such, the common pleas court affirmed the portion of the board's order restoring Dr. Menkes' certificate to practice osteopathic medicine and surgery in Ohio and reversed the portion of the board's order reprimanding Dr. Menkes.

{¶ 17} The board appeals, presenting the following two errors for our review:

> [I.] The lower court erred in holding that the public board order restricting Dr. Menkes' Oregon license did not constitute a violation of R.C. 4731.22(B)(22).

> [II.] The lower court erred and abused its discretion in finding no evidence of intent to mislead.

{¶ 18} In an administrative appeal, pursuant to R.C. 119.12, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). Reliable, probative, and substantial evidence has been defined as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Our Place*, *Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 19} The trial court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " (Emphasis sic.) *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The trial court "must give due deference to the administrative resolution of evidentiary conflicts," although "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), citing R.C. 119.12.

{¶ 20} An appellate court's review of an administrative decision is more limited than that of the common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Absent an abuse of discretion, this court may not substitute its judgment for that of the administrative agency or the trial court. *Pons* at 621. However, on the question of whether the agency's

order was in accordance with the law, this court's review is plenary. *Kistler v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 04AP-1095, 2006-Ohio-3308, ¶ 9.

{¶ 21} The board's first assignment of error asserts the common pleas court erred in holding that the voluntary limitation on Dr. Menkes' Oregon medical license was not a violation of R.C. 4731.22(B)(22). R.C. 4731.22 provides as follows:

> (B) The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice or certificate to recommend, refuse to issue a certificate to an individual, refuse to renew a certificate, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
>
> * * *
>
> (22) Any of the following actions taken by an agency responsible for authorizing, certifying, or regulating an individual to practice a health care occupation or provide health care services in this state or another jurisdiction, for any reason other than the nonpayment of fees: the limitation, revocation, or suspension of an individual's license to practice; acceptance of an individual's license surrender; denial of a license; refusal to renew or reinstate a license; imposition of probation; or issuance of an order of censure or other reprimand.

{¶ 22} "The paramount concern in statutory interpretation is the legislative intent in enacting the statute." *State ex rel. Taxpayers for Westerville Schools v. Franklin Cty. Bd. of Elections*, 133 Ohio St.3d 153, 2012-Ohio-4267, ¶ 17. To discern this intent, courts first review the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage. *Id.* Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation. *Cline v. Ohio BMV*, 61 Ohio St.3d 93, 96 (1991), citing *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 190 (1980).

{¶ 23} R.C. 4731.22(B)(22) plainly provides that "[a]ny * * * action[] taken by" a health care licensing agency to "limit[]" an individual's license to practice may be grounds for discipline in Ohio. "In determining whether the action of a medical board of another state falls under R.C. 4731.22(B)(22), we ask whether the language of the out-of-state action

can reasonably be interpreted as one of the enumerated actions in R.C. 4731.22." *Angerbauer v. State Med. Bd.*, 10th Dist. No. 17AP-88, 2017-Ohio-7420, ¶ 28, citing *Gross v. State Med. Bd.*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 27-38.

{¶ 24} The Oregon voluntary limitation was a limitation for purposes of R.C. 4731.22(B)(22), as it precluded Dr. Menkes from practicing medicine outside of an office based setting. *See* Ohio Adm.Code 4731-13-36(D) (defining a "limitation" as something which "preclude[s] the certificate holder from engaging in a particular conduct or activity"); *Gross* at ¶ 36 (stating that a "limitation" under R.C. 4731.22(B)(22) "reasonably may be construed as referencing an action taken by a medical licensing agency in another jurisdiction that imposed an enforceable restriction upon the scope or exercise of a person's medical license"). Accordingly, the issue in the present case resolves to whether the voluntary limitation resulted from an action taken by the Oregon board.

{¶ 25} O.R.S. 677.410 permits an Oregon licensee to request a limitation of their license, providing as follows:

> A licensee may request in writing to the Oregon Medical Board a limitation of license to practice medicine or podiatry, respectively. The board may grant such request for limitation and shall have authority, if it deems appropriate, to attach conditions to the license of the licensee within the provisions of 677.205 and 677.410 to 677.425. Removal of a voluntary limitation on licensure to practice medicine or podiatry shall be determined by the board.

{¶ 26} In contrast to O.R.S. 677.410, O.R.S. 677.205 permits the Oregon board to "discipline * * * any person licensed * * * under this chapter" by "[p]lac[ing] limitations on the license." O.R.S. 677.205(1)and (2)(e). *See Read v. Oregon Med. Bd.*, 244 Or.App. 603, 614-15 (2011) (stating that the Oregon board's "authority to discipline licensees derives from ORS 677.205"); *Gambee v. Cornelius*, Or. Dist. No. 10-6265-AA (Mar. 31, 2011), citing O.R.S. 677.205(2) (noting that the "statutes regulating the practice of medicine in Oregon give the [Oregon] Board authority to suspend, revoke, or place limitations on licensees"). *See also* O.R.S. 677.190 (setting forth the grounds for disciplinary action in Oregon); O.R.S. 677.200(1) (providing that "any proceeding for disciplinary action of a licensee" in Oregon begins by filing a "written complaint [with the] Oregon * * * Board"). Ohio does not have a

statute, similar to O.R.S. 677.410, which would permit a licensee to voluntarily request a limitation of their Ohio medical license.

{¶ 27} O.R.S. 677.415 authorizes the Oregon board to "investigate any evidence that appears to show that a licensee licensed by the board is or may be medically incompetent * * * guilty of unprofessional or dishonorable conduct or is or may be a licensee with a physical incapacity or an impairment." 677.415(2). The Oregon board may also order a "physical or medical competency examination" if it has "reasonable cause to believe that any licensee is or may be unable to practice medicine or podiatry with reasonable skill and safety to patients." O.R.S. 677.420(1) and (2).

{¶ 28} The Ohio board contends that the Oregon board's decision to grant Dr. Menkes' request for the voluntary limitation constituted an action "taken by" the Oregon board for purposes of R.C. 4731.22(B)(22). However, the Oregon board's administrative approval of Dr. Menkes' request for the voluntary limitation was not an action taken by the Oregon board to limit Dr. Menkes' medical license. Rather, Dr. Menkes took the action to limit his Oregon medical license, and the Oregon board simply responded to Dr. Menkes' request for the limitation. While O.R.S. 677.205 permitted the Oregon board to take disciplinary action to limit Dr. Menkes' license, O.R.S. 677.410 permitted Dr. Menkes to take action to limit his own medical license. The Oregon board informed Dr. Menkes that the voluntary limitation was "not considered to be disciplinary in nature, and ha[d] not been reported to the National Practitioner Databank." (Appellee's Ex. B.)

{¶ 29} While R.C. 4731.22(B)(22) does not require that the action limiting a license consist of disciplinary action, R.C. 4731.22(B)(22) does require that the action be "taken by" the health care licensing agency, not the licensee. The Oregon board could have taken other non-disciplinary actions against Dr. Menkes which may have resulted in limitations on his license, including investigating Dr. Menkes pursuant to O.R.S. 677.415 or ordering him to submit to an examination pursuant to O.R.S. 677.420. However, the Oregon board did not take any of the actions it was statutorily authorized to take against Dr. Menkes.

{¶ 30} The board contends that in *Angerbauer* and *Gross* this court "upheld Board orders in bootstrap cases that [took] action based upon a voluntary agreement that was ratified by another licensing board." (Appellant's Brief at 19.) In both *Angerbauer* and *Gross* an out-of-state health care licensing agency investigated a doctor's medical practice

and found that both doctors failed to meet the applicable standard of care. *Angerbauer* at ¶ 2, 6-7; *Gross* at ¶ 30. As a result, the doctors and the agencies entered into agreed orders, which imposed sanctions on the doctors' medical licenses. *Angerbauer* at ¶ 31; *Gross* at ¶ 31. The reviewing courts concluded that the agreed orders were "limitations" for purposes of R.C. 4731.22(B)(22). *Angerbauer* at ¶ 32; *Gross* at ¶ 37-38. The *Gross* court rejected the doctor's argument that "he simply inactivated his Colorado license in an administrative, ministerial manner," as the record demonstrated that the Colorado State Board of Medical Examiners permanently placed the doctor's license on inactive status after it found "that Dr. Gross failed to meet generally accepted standards of medical practices with regard to several cases that it reviewed." *Id.* at ¶ 40.

{¶ 31} Thus, in both *Angerbauer* and *Gross* the out-of-state agencies reviewed the doctors' medical practices and found that the doctors failed to meet the applicable standard of care. Although the doctors agreed to the orders at issue, the agencies both took actions against the doctors which culminated in the agreed orders. In contrast, the Oregon board never investigated Dr. Menkes' medical practice and never found that Dr. Menkes failed to meet the applicable standard of care. The Oregon board did not impose the voluntary limitation against Dr. Menkes as a sanction for misconduct.

{¶ 32} Pursuant to our plenary review, we find the Oregon board's administrative approval of Dr. Menkes' request to voluntarily limit his Oregon medical license was not an action "taken by" the Oregon board to limit Dr. Menkes' license for purposes of R.C. 4731.22(B)(22). As such, the Ohio board's order reprimanding Dr. Menkes pursuant to R.C. 4731.22(B)(22) was not in accordance with law.

{¶ 33} Based on the foregoing, the board's first assignment of error is overruled.

{¶ 34} The board's second assignment of error asserts the common pleas court erred in finding no evidence of Dr. Menkes' intent to mislead or deceive the board pursuant to R.C. 4731.22(B)(5). R.C. 4731.22(B)(5) states that the board may discipline a licensee or refuse to reinstate a license for "[m]aking a false, fraudulent, deceptive, or misleading statement * * * in securing or attempting to secure any license or certificate to practice issued by the board." The statute defines a "false, fraudulent, deceptive, or misleading statement" as a "statement that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, [or] is intended or is likely to create

false or unjustified expectations of favorable results." R.C. 4731.22(B)(5). In order to discipline a physician under R.C. 4731.22(B)(5), the board must prove that the physician intended to mislead or deceive the board. *Applegate v. State Med. Bd. of Ohio*, 10th Dist. No. 07AP-78, 2007-Ohio-6384, ¶ 12; *Mansour v. State Med. Bd. of Ohio*, 1oth Dist. No. 14AP-829, 2015-Ohio-1716, ¶ 25 ("*Mansour I*"); *Gipe v. State Med. Bd. of Ohio*, 10th Dist. No. 02AP-1315, 2003-Ohio-4061, ¶ 64; *Rajan v. State Med. Bd. of Ohio*, 118 Ohio App.3d 187, 194 (10th Dist.1997).

{¶ 35} In the report and recommendation, the hearing examiner cited three reasons as support for its conclusion that Dr. Menkes intended to mislead or deceive the board when he failed to list his Oregon medical license on the Ohio application. The hearing examiner noted that: (1) Dr. Menkes was engaged in the process of trying to remove the Oregon voluntary limitation earlier in 2015, such that his Oregon license was not a "distant memory; it had been on his mind recently when his Ohio application was submitted[;]" (2) the hearing examiner's "belie[f]" that the process of creating a CV is cumulative, rendering it likely that Dr. Menkes' CV had in the past included his Oregon medical license; and (3) the "remarkably coincidental" fact that Oregon, the only state where Dr. Menkes had a limitation on his license, was the license Dr. Menkes failed to list on his application. (Report & Recommendation at 16.)

{¶ 36} The common pleas court concluded that the hearing examiner's findings were "not based upon evidence, let alone reliable, probative, and substantial evidence." (Decision at 20-21.) The court observed that:

> [T]he Hearing Examiner's determination was based upon the Hearing Examiner's "belief" about the process by which [Dr. Menkes] drafted his CV, the "likelihood" that the Oregon medical license had been listed in [Dr. Menkes'] CV at some time in the past, conjecture as to why the CV that [Dr. Menkes] provided to Ms. deBlois did not list the Oregon medical license, and the "remarkable coincidence" that, of all [Dr. Menkes'] medical licenses, Oregon was the only medical license with a limitation.

(Decision at 21.)

{¶ 37} The common pleas court further concluded that Dr. Menkes' testimony, denying any intent to mislead or deceive the board, was "the only evidence in the record on the issue of [Dr. Menkes'] intent, or lack of intent, to mislead the Ohio Medical Board."

(Decision at 21.) However, a licensee's intent to mislead or deceive the board "may be inferred from the surrounding circumstances, such as when a licensee clearly has information which he fails to disclose in response to a direct question." *Coleman v. State Med. Bd. of Ohio*, 10th Dist. No. 06AP-1299, 2007-Ohio-5007, ¶ 12, citing *Webb v. State Med. Bd.*, 146 Ohio App.3d 621, 628 (10th Dist.2001). *Accord Hayes v. State Med. Bd. of Ohio*, 138 Ohio App.3d 762, 770 (10th Dist.2000), citing *Krain v. State Med. Bd. of Ohio*, 10th Dist. 97APE08-981 (Oct. 29, 1998); *Mansour I* at ¶ 25. Thus, "[d]irect evidence of intent is not necessary because intent may be inferred from the surrounding circumstances." *Mansour v. State Med. Bd. of Ohio*, 10th Dist. No. 17AP-615, 2018-Ohio-2605, ¶ 19 ("*Mansour II*"). The board is under no obligation to believe a doctor's testimony "den[ying] any intent to deceive." *Mansour I* at ¶ 27. *See D'Souza v. State Med. Bd. of Ohio*, 10th Dist. No. 09AP-97, 2009-Ohio-6901, ¶ 17 (noting that the agency, as the finder of fact, is entitled to believe all, part, or none of a witnesses' testimony); *Bhama v. State Med. Bd.*, 10th Dist. No. 08AP-488, 2009-Ohio-819, ¶ 34 (stating that the board "is not bound to accept a version of the facts that it does not find credible where there is other evidence in the record to the contrary").

{¶ 38} The application for license restoration directly asked Dr. Menkes to list all the states where he held medical licenses, whether the license was current or not. Dr. Menkes "knew [he] had a prior license" in Oregon. (Hearing Tr. at 74.) Thus, Dr. Menkes failed to disclose information he possessed in response to a direct question on the application. *See Bhama* at ¶ 35 (finding evidence of intent to deceive as the appellant "clearly knew that she had been terminated from Clinton Valley and failed to disclose that information in response to a direct question"); *Mansour II* at ¶ 25 (finding evidence of intent to deceive as "Dr. Mansour knew that he had been convicted of domestic violence and failed to disclose that in response to a direct question"). Although deBlois filled out the state licensure portion on the application, Dr. Menkes affirmed that he reviewed the application before submitting it to the board and affirmed that he executed the affidavit averring that all statements in the application were true and complete.

{¶ 39} The hearing examiner's assumptions regarding Dr. Menkes' CV consisted of unsupported conclusions and were not entitled to deference. *See Ohio Historical Soc.* at 471 (holding that an agency's findings of fact "are presumed to be correct and must be

deferred to by a reviewing court unless that court determines that the agency's findings * * * rest upon improper inferences, or are otherwise unsupportable"). However, even if some of an agency's findings rest "upon improper inferences or unsupported conclusions and therefore should have been excluded from consideration," an agency's decision need not be reversed where "the record contains other reliable, probative and substantial evidence." *Douglas Bigelow Chevrolet v. GMC*, 10th Dist. No. 02AP-1156, 2003-Ohio-5942, ¶ 40. *See S & P Lebos, Inc. v. Ohio Liquor Control Comm.*, 163 Ohio App.3d 803, 2005-Ohio-4552, ¶ 30 (10th Dist.) (noting that the "erroneous reliance upon the investigator's report [did] not require reversal as long as there [was] other reliable, probative and substantial evidence to support the commission's order"); *Abunku v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-906, 2012-Ohio-2734, ¶ 20 (finding that "even if it was inappropriate for the hearing examiner to admit the DEA's order to show cause into evidence" the appellant was not prejudiced "because other reliable, probative, and substantial evidence in the record prove[d] that appellant violated R.C. 4731.22(B)(24)").

{¶ 40} The common pleas court failed to address the hearing examiner's finding regarding Dr. Menkes' attempt to remove the Oregon voluntary limitation in early 2015. The evidence of Dr. Menkes' communications with the Oregon board in late 2014 and early 2015 consist of letters sent from the Oregon board to Dr. Menkes and Dr. Menkes' own testimony at the hearing. Furthermore, Dr. Menkes testified at the hearing that other state licensing agencies asked him about the Oregon voluntary limitation when he sought licensure in those states. Dr. Menkes explained that Florida asked him about the Oregon voluntary limitation in 2013, and that Idaho asked him about the Oregon voluntary limitation "[p]robably in 2014." (Hearing Tr. at 70.) Dr. Menkes received his Florida medical license in 2013 and received his Idaho medical license in 2015. (Appellee's Ex. A.) Based on these experiences, Dr. Menkes affirmed that he knew other state agencies "had questions about that [Oregon voluntary] limitation prior to applying for a license in Ohio." (Hearing Tr. at 70.)

{¶ 41} Thus, reliable, probative, and substantial evidence in the record established that Dr. Menkes had communicated with other state health care licensing agencies about his Oregon medical license between six months and two years prior to submitting his Ohio application for license restoration. The evidence of Dr. Menkes' recent communications

about his Oregon medical license was evidence of surrounding circumstances which supported the board's conclusion that Dr. Menkes intentionally omitted his Oregon medical license from the Ohio application. *See Instanbooly v. Ohio State Med. Bd.*, 10th Dist. No. 04AP-76, 2004-Ohio-3696, ¶ 18 (finding evidence of a doctor's intent to deceive or mislead the board where the doctor answered "no" to an application question asking whether any board had filed a complaint against her, but the record demonstrated that the Michigan state medical board had filed an "administrative complaint" against her "one year and four months prior to her filling out the Ohio renewal application"); *Applegate* at ¶ 20-21 (finding evidence of intent to mislead where the doctor asserted that his negative answer to an application question asking whether he had ever been a defendant in a medical negligence action resulted from "inattention," but the board found it "unlikely that Applegate would forget the February 1991 malpractice action - - it was the first malpractice action filed against him, it was settled for a significant amount, and it occurred only two years prior" to the time he submitted his license application).

{¶ 42} Dr. Menkes also explained at the hearing that, when he read question seven on the application, his "interpretation" of the question was "has any Board in any way limited; and [his] response was [he] limited [his Oregon medical license] voluntarily. And, therefore, the answer 'no' [was] true and correct in [his] understanding." (Hearing Tr. at 78.) Such evidence bolsters the board's conclusion regarding Dr. Menkes' intent, as the testimony demonstrates that Dr. Menkes thought about his Oregon medical license when deciding how to answer another question on the application.

{¶ 43} The common pleas court reversed the board's order finding a violation of R.C. 4731.22(B)(5) based on Dr. Menkes' testimony denying any intent to deceive or mislead the board and the hearing examiner's unsupportable conclusions. The common pleas court's ruling arbitrarily ignored other reliable, probative, and substantial evidence in the record of surrounding circumstances which supported the board's conclusion that Dr. Menkes acted with intent to mislead or deceive the board. As such, the common pleas court abused its discretion by reversing the portion of the board's order reprimanding Dr. Menkes for a violation of R.C. 4731.22(B)(5).

{¶ 44} Based on the foregoing, the board's second assignment of error is sustained.

{¶ 45} Having overruled the board's first assignment of error, but having sustained the board's second assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand the case to that court for proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*case remanded.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____